**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ASPIRA, INC. OF PENNSYLVANIA, | : | |
| | : | |
| *Plaintiff*, | : | No. 2:19-CV-04415-JS |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA | : | |
| and THE PHILADELPHIA BOARD OF | : | |
| EDUCATION, | : | |
| | : | |
| *Defendants*. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

LEVIN LEGAL GROUP, P.C.

Allison S. Petersen (PA 86335)
Paul J. Cianci (PA 82717)
David W. Brown (PA 201553)
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
(215) 938-6378
apetersen@levinlegalgroup.com
pcianci@levinlegalgroup.com
dbrown@levinlegalgroup.com

*Attorneys for Defendants*

Dated:  October 7, 2019

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................... ii

I.   INTRODUCTION ........................................................................................ 1

II.  PROCEDURAL HISTORY ......................................................................... 2

III. STATEMENT OF QUESTIONS INVOLVED ........................................... 2

IV. FACTS ......................................................................................................... 3

V.  ARGUMENT ............................................................................................... 6

   A. Standard of Review on a Motion to Dismiss ..................................... 6

   B. ASPIRA Lacks Standing to Bring Its Claims ................................... 6

      1. Lack of pleading of an injury in fact .......................................... 7

      2. ASPIRA lacks standing because the charters are agreements between the School District and the Charter Schools ..................................... 8

   C. ASPIRA Fails to State a Claim for Breach of Contract ................................. 10

      1. As a matter of law, Turnaround Team status did not create a contract between ASPIRA and the School District ..................................... 10

      2. ASPIRA is not a party or third-party beneficiary to either the Olney charter or Stetson charter ................................................................ 12

   D. ASPIRA Fails to State a Claim for Violation of Procedural Due Process.................... 15

      1. This matter is not ripe for decision ............................................. 19

      2. The Charter School Law provides exclusive review of a school board decision not to renew a charter ................................................. 20

   E. The School Board is Not a Separate Entity and Must Be Dismissed ........................... 21

   F. Plaintiff Has Failed to Join Indispensable Parties........................................... 22

   G. Issues Regarding Damages Claimed by Plaintiff............................................ 24

      1. Monetary damages are not permitted on claims made pursuant to the Pennsylvania Constitution ....................................................... 24

      2. Punitive damages are not available in this case ............................... 25

VI. CONCLUSION ........................................................................................ 26

i

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967).................................................................. 19

*Agresta v. Goode*, 797 F. Supp. 399 (E.D. Pa. 1992) ......................................................... 26

*Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000) ..................................................................... 16

*American Civil Liberties Union of N.J. v. Twp. of Wall*, 246 F.3d 258 (3d Cir. 2001) ................. 7

*Bank of Am. Nat'l Trust & Savs. Assoc. v. Nilsi*, 844 F.2d 1050 (3d Cir. 1988) .................. 15, 24

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................... 6, 17

*Bolden v. SEPTA*, 953 F.2d 807 (3d Cir. 1991) .................................................................. 26

*Califano v. Sanders*, 430 U.S. 99 (1977) .......................................................................... 19

*Centennial School District v. Phil L. ex rel. Matthew L.*, 559 F. Supp. 2d 634 (E.D. Pa. 2008).... 6

*Clark v. Township of Falls*, 890 F.2d 611 (3d Cir. 1989).................................................... 16

*Cmty. Acad. of Philadelphia Charter Sch. v. Philadelphia Sch. Dist. Sch. Reform Comm'n*, 65 A.3d 1023 (Pa. Commw. 2013)............................................................................................ 4

*Dickson v. Murphy,* 202 F. App'x 578 (3d Cir. 2006)......................................................... 24

*DiGregorio v. Keystone Health Plan East,* 840 A.2d 361 (Pa. Super. 2003).......................... 26

*E.B. v. Woodland Hills Sch. Dist.,* No. CIV.A. 10-0442, 2010 WL 2817201 (W.D. Pa. July 16, 2010).......................................................................................................................... 22

*Edgar v. Avaya, Inc.* 503 F.3d 340 (3d Cir. 2007)............................................................... 6

*Funk v. Dep't of Envtl. Prot.,* 71 A.3d 1097 (Pa. Commw. 2013) ....................................... 21

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990)........................................................... 7

*Germantown Cab Co. v. Philadelphia Parking Auth.*, No. CIV.A. 14-4686, 2015 WL 1954163 (E.D. Pa. Apr. 30, 2015)................................................................................................ 15

*Glickstein v. Neshaminy Sch. Dist.,* No. Civ. A. 96-6236, 1997 WL 660636 (E.D. Pa. Oct. 22, 1997).......................................................................................................................... 22

*Hart v. Univ. of Scranton,* No. 11-CV-1576, 2012 WL 1057383 (M.D. Pa., Mar. 28, 2012)...... 11

*Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.,* 7 A.3d 278 (Pa. Super. 2010) ........................ 15

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399 (3d Cir. 1993) ................... 23

*Jones v. City of Philadelphia*, 890 A.2d 1188 (Pa. Commw. 2006)........................................... 25

*Lawrence v. Texas*, 539 U.S. 558 (2003) ............................................................................ 16

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ....................................................... 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................... 7

*Lurie v. Republican Alliance*, 192 A.2d 367 (Pa. 1963) ....................................................... 21

*Meyer v. Nebraska,* 262 U.S. 390 (1923) ........................................................................... 16

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.,* 137 A.3d 1247 (Pa. 2016) .............................................................................................. 10

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ............................... 20

*Mulgrew v. Fumo,* No. 03-CV-5039, 2004 WL 1699368 (E.D. Pa. July 29, 2004) .................... 25

*NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333 (3d Cir. 2001) .................... 19

*Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) ................................................. 25

*Pa. Game Comm'n v. Marich*, 666 A.2d 253 (Pa. 1995) .................................................. 15

*Peachlum v. City of York*, 333 F.3d 429 (3d Cir. 2003) ............................................... 19

*Phillips v. State Tax Equalization Bd.*, 948 A.2d 889 (Pa. Commw. 2008) ............................. 21

*Pocono Mountain Charter School v. Pocono Mountain School Distrist*, 442 Fed. App'x. 681 (3d Cir. 2011) .......................................................................................... 25

*Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454 (3d Cir. 1994) ..... 19

*Pub. Interest Research Grp. of N.J. v. Magnesium Elektron, Inc.,* 123 F.3d 111 (3d Cir. 1997) ... 7

*Reading Sch. Dist. v. I-Lead Charter Sch.*, 206 A.3d 27 (Pa. Commw. 2019) ............................. 7

*Scarpitti v. Weborg,* 609 A.2d 147 (Pa. 1992) ........................................................ 13

*Smith v. Warwick Sch. Dist.,* No. CV 15-442, 2016 WL 3854586 (E.D. Pa. July 8, 2016) ......... 21

*Thompson v. Horsham Township*, 576 F. Supp. 2d 681 (E.D. Pa. 2008) .................................. 6

*Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131 (3d Cir. 2009) ................................. 7

*United States v. One Toshiba Color Television*, 213 F.3d 147 (3d Cir. 2000) ......................... 18

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................ 7

*West Chester Area Sch. Dist. v. Collegium Charter Sch.*, 812 A.2d 1172 (Pa. 2002) .................. 7

*Young v. Pleasant Valley Sch. Dist.,* No. CIV.A. 3:07CV854, 2008 WL 417739 (M.D. Pa. Feb. 13, 2008) .......................................................................................... 22

## Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................ 1, 6

Fed. R. Civ. P. 19 ............................................................................. 3, 22, 24

Fed. R. Civ. P. 8 ............................................................................... 6, 11

Fed. R. Civ. P. 81 .............................................................................. 2

Federal Rule of Civil Procedure 8 .............................................................. 6

## Statutes

24 P.S. § 17-1701-A ............................................................................ 2

24 P.S. § 17-1716-A ............................................................................ 9

24 P.S. § 17-1717-A ............................................................................ 9

24 P.S. § 17-1720-A ............................................................................ 3, 9

24 P.S. § 17-1729-A ......................................................................... passim

24 P.S. § 2-213 ............................................................................... 22

28 U.S.C. § 1331 .............................................................................. 2

42 Pa. C.S. § 5525 ............................................................................ 12

## I.      INTRODUCTION

Plaintiff, ASPIRA, Inc. of Pennsylvania ("ASPIRA" or "Plaintiff"), is the management company for four brick-and-mortar charter schools located in the City of Philadelphia.  As the management company for the four charter schools, ASPIRA has no contract with The School District of Philadelphia (the "School District") or the School District's Board of Education (the "Board of Education").[1]  The only parties to each charter agreement for the four charter schools are the School District and the respective, individual charter school.

Despite not having a contract or agreement with the School District, ASPIRA claims in this litigation that Defendants violated ASPIRA's contract rights and due process rights by: (1) not rubber-stamping the renewals of the four charter schools that ASPIRA manages, and (2) conducting nonrenewal hearings for two of those charter schools.  ASPIRA makes these claims: (1) to stage a preemptive strike against the potential nonrenewal of the two charters by the Board of Education; and (2) to deprive the Pennsylvania State Charter School Appeal Board ("CAB") of jurisdiction over appeals from such nonrenewals assuming the Board of Education votes to nonrenew the charters of the two charter schools.

ASPIRA, however, lacks standing to even bring its claims against Defendants. Moreover, ASPIRA has failed to join the four charter schools as parties to this litigation in violation of the Federal Rules of Civil Procedure.  Even if these issues were overlooked, each of Plaintiff's claims contains fatal flaws requiring dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), as more fully set forth below.  Ultimately, ASPIRA seeks to use the power of the courts to seek relief to which it is clearly not entitled under the Pennsylvania Charter

---

[1]      The Board of Education is a Defendant in this litigation and is named in the caption as the "Philadelphia Board of Education."

School Law, 24 P.S. § 17-1701-A *et seq.* ("CSL").  As such, all of Plaintiff's claims must be dismissed.

## II.     PROCEDURAL HISTORY

On September 13, 2019, Plaintiff filed a complaint (the "Complaint") in the Court of Common Pleas for Philadelphia County (the "State Court") asserting causes of action against Defendants alleging breach of contract and violation of due process under the U.S. Constitution and the Pennsylvania Constitution.   The Complaint was served on the School District on September 16, 2019.

On September 20, 2019, Defendants filed a Notice of Removal removing the matter to this Court based on federal question jurisdiction.  *See* 28 U.S.C. § 1331.  Under the Federal Rules of Civil Procedure, Defendants must respond to the Complaint on or before October 7, 2019. Fed. R. Civ. P. 81(c)(2).  Defendants now present this timely filed motion.

## III.    STATEMENT OF QUESTIONS INVOLVED

1.     Does Plaintiff have standing to bring its claims?  Suggested answer: No.

2.     Has Plaintiff stated a claim for breach of contract?  Suggested answer:  No.

3.     Has Plaintiff stated a claim for violation of due process under either the U.S. Constitution or the Pennsylvania Constitution?  Suggested answer:  No.

4.     Are Plaintiff's claims ripe for decision?  Suggested Answer:  No.

5.     Does the Charter School Law provide CAB with the exclusive review of charter nonrenewal decisions?  Suggested answer:  Yes.

6.     Is the Board of Education a separate entity from the School District that is capable of being sued?  Suggested answer:  No.

7.     Has Plaintiff joined all indispensable parties as required by Fed. R. Civ. P. 19? Suggested answer:  No.

8.     Are monetary damages available on a claim made pursuant to the Pennsylvania Constitution?  Suggested answer:  No.

9.     Are punitive damages available in this case?  Suggested answer:  No.

## IV.    FACTS

The School District relies, as it must on a motion to dismiss, on the facts as presented by ASPIRA, including the attachments to the Complaint.

Under the Public School Code of 1949 ("School Code"), charter schools in Pennsylvania operate pursuant to charters granted by the governing board of local school directors for initial terms of three to five years.  24 P.S. § 17-1720-A(a).  The School Code permits local school districts to revoke or to not renew charters if a charter school is found to have failed to meet certain legal requirements, to have failed to comply with its charter, or to have committed certain other violations.  24 P.S. § 17-1729-A.  Any decision of a local board of school directors to revoke or to not renew a charter may be appealed to CAB, which has "the exclusive review of a decision not to renew or revoke a charter."  24 P.S. § 17-1729-A(d).

In 2010, under the School District's Renaissance Schools Initiative, the School District granted a charter to John B. Stetson Charter School: an ASPIRA, Inc. of Pennsylvania School ("Stetson") to operate the John B. Stetson Middle School as a charter school.  In 2011, under the School District's Renaissance Schools Initiative, the School District granted a charter to Olney Charter High School ("Olney") to operate the Olney East High School and Olney West High School as a single charter school.

The parties to the Stetson Charter are the School District and Stetson, and the parties to the Olney Charter are the School District and Olney.  *See* Compl., Exh. D, pp. 1, 31; Exh. G, pp. 1, 31.  Pursuant to the charters for Stetson and Olney, both Stetson and Olney are to be operated by their respective Board of Trustees ("Charter Board").  The charters were each granted "to the Charter Board . . . to operate the Charter School as a public school under and pursuant to the Renaissance Schools Policy, the Charter School Law and all other Applicable Laws."  Compl., Exh. D, pp. 1-2; Exh. G, pp. 1, 3.  The Charter Board "shall be responsible for the operation of the Charter School."  Compl., Exh. D, p. 7; Exh. G, p. 7.  The individuals who signed the Stetson and Olney charters on behalf of Stetson and Olney were the Chairman and Secretary of each charter school's Board of Trustees at the time.  *Id.*  ASPIRA is not a party to either charter, and no one from ASPIRA is a signer of the charters.  The Stetson and Olney charters expired on June 30, 2015, and June 30, 2016, respectively.  Compl., ¶ 7.  However, Stetson and Olney have continued to operate under their last signed charters.[2]

ASPIRA is the management company for two other brick-and-mortar charter schools in Philadelphia:  Eugenio Maria de Hostos Charter School ("Hostos") and Antonia Pantoja Charter School ("Pantoja"; collectively Stetson, Olney, Hostos, and Pantoja shall be known as the "Charter Schools").  Compl., ¶ 1.  Hostos and Pantoja were issued charters by the School District in 1998 and 2008, respectively.  *See* Compl., Exh. H, p. 2; Exh. I, p. 2.  Similar to the Olney and Stetson charters, ASPIRA is not a party to or signer of the Hostos or Pantoja charters, and the Hostos and Pantoja Charter Boards were granted the authority to operate those charter schools,

---

[2]      In the absence of formal action renewing or non-renewing a school's charter, an application to renew remains pending until a renewed charter is signed or a final determination of nonrenewal issued without any effect on the continued operation of the charter school.  *Cmty. Acad. of Philadelphia Charter Sch. v. Philadelphia Sch. Dist. Sch. Reform Comm'n,* 65 A.3d 1023, 1031 (Pa. Commw. 2013).

not ASPIRA.  Compl., Exh. H, pp. 1, 2, 8; Exh. I, pp. 1, 2, 8.  Both charters expired on June 30, 2018.  *See* n.2, *supra*.

On April 11, 2016, the School Districts' Charter Schools Office ("CSO") issued reports recommending that the Stetson and Olney charters not be renewed.  Compl., ¶ 100.  On December 8, 2017, the CSO presented updated reports on Stetson and Olney, but maintained the recommendation not to renew their charters.  *Id.,* ¶ 104.  On December 14, 2017, the CSO presented its recommendations regarding Stetson and Olney to the School Reform Commission ("SRC") at a public meeting, and the SRC voted to adopt resolutions to commence nonrenewal hearings against Olney and Stetson.  *Id.*, ¶¶ 114, 128.  Plaintiff does not allege in the Complaint that it did not have notice of these actions or that Olney and Stetson did not have notice of these actions.

On July 1, 2018, control of the School District was transferred from the state-created SRC to the Board of Education.  Also in 2018, pursuant to the CSL, the Board of Education approved by action item at a public meeting notices of nonrenewal to initiate nonrenewal proceedings against Stetson and Olney.  *Id.,* ¶ 134.  Public hearings were held over 16 days from March 12, 2019 to April 15, 2019.  *Id.,* ¶ 147.  Prior to the start of the hearings, ASPIRA petitioned to intervene in the nonrenewal proceedings, a request that was denied by the Board of Education's hearing officer.  *Id.*, ¶¶ 142-143.  Representatives for both Stetson and Olney attended the hearings with legal counsel.  The Complaint does not allege that the Board of Education has yet taken action on the nonrenewal of the Stetson charter or the Olney charter.[3]

---

[3]      Although not in the Complaint, on September 19, 2019, the hearing officer issued recommendations to the School District and to Stetson and Olney, respectively, that the charter of Stetson and the charter of Olney should not be renewed.  As of the date of filing of this memorandum, the Board of Education has not acted on those recommendations.

## V.      ARGUMENT

### A.      Standard of Review on a Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted.  In reviewing a motion to dismiss under Rule 12(b)(6), the court "accepts well-pleaded allegations and reasonable inferences as true, and construes the complaint in the light most favorable to the non-moving party."  *Thompson v. Horsham Township,* 576 F. Supp. 2d 681, 687 (E.D. Pa. 2008). However, the Court must dismiss the complaint if the plaintiff "does not plead all of the essential elements of his or her legal claim . . . ."  *Edgar v. Avaya, Inc.,* 503 F.3d 340, 349 (3d Cir. 2007).

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the United States Supreme Court ruled that a plaintiff must assert more than labels and conclusions, and that a well-pleaded complaint must include facts that raise the right to relief above the speculative level.  Moreover, the Court is not required to credit bald assertions or legal conclusions in a complaint.  *Centennial School District v. Phil L. ex rel. Matthew L.*, 559 F. Supp. 2d 634 (E.D. Pa. 2008).  Thus, while Fed. R. Civ. P. 8 calls for "a short and plain statement of the claim showing that the pleader is entitled to relief," the Third Circuit has specifically noted that the *Twombly* court called for pleading beyond a speculative level in order to meet the requirements of Rule 8.

### B.      ASPIRA Lacks Standing To Bring Its Claims

Plaintiff lacks standing to bring its claims because it is not a party to any of the charters held by the Charter Schools.   ASPIRA is merely the management company for the Charter Schools.  Furthermore, ASPIRA is not a party to any contract with the School District related to the Charter Schools.  Any right to challenge the decisions of the School District belongs to the individual Charter Schools, which can challenge any future charter nonrenewal decision to CAB;

CAB must, by law, provide a *de novo* review of the School District's decision to nonrenew. *Reading Sch. Dist. v. I-Lead Charter Sch.*, 206 A.3d 27, 35 (Pa. Commw. 2019) (*citing West Chester Area Sch. Dist. v. Collegium Charter Sch.*, 812 A.2d 1172, 1180 (Pa. 2002).

Standing is a threshold jurisdictional requirement, derived from the "case or controversy" language of Article III of the Constitution. *Pub. Interest Research Grp. of N.J. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 117 (3d Cir. 1997). Federal courts are obligated to examine their own jurisdiction, and "standing is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230-31 (1990). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498 (1975); *see also American Civil Liberties Union of N.J. v. Township of Wall,* 246 F.3d 258, 261 (3d Cir. 2001) (standing "is not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit, but an integral part of the governmental charter established by the Constitution.")

Plaintiff cannot satisfy the three elements necessary to establish standing:

First, the plaintiff must have suffered a concrete, particularized injury-in-fact, which must be actual or imminent, not conjectural or hypothetical. Second, that injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, the plaintiff must establish that a favorable decision likely would redress the injury.

*Toll Bros., Inc. v. Twp. of Readington,* 555 F.3d 131, 137-38 (3d Cir. 2009) (*quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)) (internal quotation marks and citations omitted).

### 1.    Lack of pleading of an injury in fact

The Complaint is vague concerning the injuries allegedly suffered by ASPIRA. ASPIRA claims that the School District's "delays in renewing each of the charters of the four ASPIRA-

managed schools" caused ASPIRA to suffer damages of approximately $5 million due to "forbearance costs, higher interest rates, and attorneys' fees" in refinancing its outstanding debt." ASPIRA does not explain, however, how any purported delay in adjudicating the rights of Olney and Stetson led to the alleged damages to ASPIRA.  Contrary to ASPIRA's allegations, the School District was within its rights under the CSL to begin nonrenewal proceedings against Olney and Stetson.  *See* 24 P.S. § 17-1729-A.

> ### 2.   ASPIRA lacks standing because the charters are agreements between the School District and the Charter Schools

ASPIRA is simply a charter management organization pursuant to a contract between the charter school and ASPIRA.  ASPIRA is not a charter school.  ASPIRA never provides any justification for why it – as opposed to the Charter Schools themselves – has standing to bring the instant claims that address the status of the charters.  Stated simply, ASPIRA is just a vendor or a contractor to the Charter Schools.  The *Charter Schools* are the parties in interest here, not ASPIRA.

The following provisions of both the Stetson charter and the Olney charter make clear that the charters are between the School District and the individual charter schools, not between the School District and ASPIRA, and that the charters are issued pursuant to compliance with the CSL, which ASPIRA now seeks to avoid.  By way of example:

> **Article I.B.**
> **Grant of the Charter**. Subject to all of the terms and conditions set forth in this Charter, the School District grants to the Charter Board this Charter to operate the Charter School as a public school under and pursuant to the Renaissance Schools Policy, the Charter School Law and all other Applicable Laws.
>
> **Article 4.A.**
> **Operation of Charter School.**  Subject to 24 P.S. §17-1714-A, the terms of this Charter[,] and Applicable Laws, the Charter Board shall be responsible for the operation of the Charter School . . . .

**Article 4.J.**
**Management Contracts.**   Prior to the execution of any agreement for the management or operation of all or substantially all of the Charter School's functions . . . the Charter Board shall submit a . . . copy of the proposed Management Agreement in a form satisfactory to the School District.

**Article 15.A.1.**
**Revocation or Nonrenewal.**  The School District reserves the right to not renew this Charter at the end of the Term or to revoke this Charter at any time during the Term in accordance with 24 P.S. §17-1729-A and Applicable Laws.

**Article 15.A.2.**
**Mutual Written Agreement.**  This Charter may be terminated by mutual written agreement prior to the expiration of the Term, which agreement shall state the effective date of termination.  The Charter School and the School District agree that unless the safety and health of the students and or [sic] staff is otherwise threatened, the effective date of termination by mutual agreement will be at the end of a semester or academic year.

Compl., Exhs. D, G.

A review of the CSL confirms that the Legislature intended charter school charters to create a relationship solely between school districts and charter schools.  *See, e.g.*, 24 P.S. § 17-1717-A(a) (giving a charter school "all powers necessary or desirable for carrying out its charter" including making contracts);  24 P.S. § 17-1716-A(a) (giving a charter school board of trustees "authority to decide matters related to the operation of the school"); 24 P.S. § 17-1720-A(a) (declaring a charter to be "legally binding on both the local board of school directors of a school district and the charter school's board of trustees."); 24 P.S. § 17-1729-A (providing a procedure for charter nonrenewal and providing the charter school an opportunity to offer testimony).

Accordingly, because ASPIRA is not the real party in interest in this matter and because ASPIRA has not properly alleged facts to show standing, ASPIRA's claims should be dismissed for lack of standing.

9

### C.      ASPIRA Fails to State a Claim for Breach of Contract

A cause of action for breach of contract can be sufficiently pled if three elements are present: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages.  *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.,* 137 A.3d 1247, 1258 (Pa. 2016).

ASPIRA alleges that it entered into a contract with the School District and Board of Education when the School District named ASPIRA as a "Turnaround Team" for Olney and Stetson.  Compl., ¶ 98.  ASPIRA further alleges that it is either a party to, or third-party beneficiary of, the charters issued by the School District to Olney and Stetson.  *Id.,* ¶¶ 201, 203. In fact, however, ASPIRA has never been a party to, or third-party beneficiary of, the charters between the Charter Schools and the School District.  And even if ASPIRA were considered to have contract rights under the charters as against the School District, ASPIRA has not pled facts that could establish that the School District breached any contractual term.

### 1.      As a matter of law, Turnaround Team status did not create a contract between ASPIRA and the School District

ASPIRA fails to properly allege either the existence of a contract or a breach of any contract to support its claim.  ASPIRA avers that it "responded to RFP-260 and applied to be a Turnaround Team for charter schools in the District," and that "[u]ltimately, the District awarded and named ASPIRA a Turnaround Team because of ASPIRA's response to RFP-260."  Compl., ¶ 39, 42.  ASPIRA then extrapolates that ASPIRA entered into a contract with the School District when it named ASPIRA as a Turnaround Team for Olney and Stetson.  *Id.*, ¶ 98.

Although ASPIRA baldly alleges that its selection as a Turnaround Team constitutes a contract, ASPIRA does not allege what form that contract takes – whether it is written or oral, express or implied, or what duties ASPIRA or the School District each supposedly owes the

other.[4]   Moreover, ASPIRA fails to identify the specific contract provision that was allegedly

breached.   For those reasons alone, the claim should be dismissed.   *See e.g., Hart v. Univ. of*

*Scranton,* No. 11-CV-1576, 2012 WL 1057383 at *3 (M.D. Pa., Mar. 28, 2012) (dismissing

breach of contract claim on motion to dismiss where plaintiff failed to meet her obligation to

identify the breach of a specific contract provision).   Instead, ASPIRA merely concludes:

> The District and ASPIRA agreed that ASPIRA, as a "Renaissance School
> Turnaround Team," would be "responsible for all aspects of restructuring and
> managing the school awarded."  RFP-260 [Compl., Exh. A] at 5. . . .  ASPIRA's
> status as a Turnaround Team for Olney and Stetson is a material term of
> ASPIRA's contract with the District, as well as of the Olney Charter and Stetson
> Charter, respectively.   The non-renewal of the Olney Charter and/or Stetson
> Charter necessarily will deny ASPIRA its status as a Turnaround Team.

Compl., ¶¶ 199-200.  ASPIRA appears to potentially identify RFP-260 as the contract at issue.  It

alleges that it filed a response to the RFP, and the School District awarded it Turnaround Team

status.  *Id.,* ¶¶ 39, 42.  However, the RFP cannot, under its own terms, constitute an applicable

contract, as it specifically states that any contract that might result from the RFP process would

be executed at a later date:

> The School District is not obligated to award a contract, charter, or performance
> agreement to any Respondents to this RFP, and the decisions made regarding any
> charter application submitted in response to this RFP shall be made in accordance
> with the provisions and requirements of this RFP, notwithstanding any contrary
> provisions in the Charter School Law. . . .  Depending on the proposed school
> model, Finalists from this RFP may be selected to enter into a contract, charter, or
> performance agreement with the School District.   Any contracts, charters, or
> performance agreements resulting from the RFP would commence July 1, 2010
> and be for a term of five (5) years.  This RFP and a Finalist's proposal in response
> to this RFP shall be incorporated into and made a part of the contract, charter or
> performance agreement.

---

[4]   Accordingly, ASPIRA has failed to provide enough detail to meet the requirement of the
Federal Rules to provide "a short and plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8.

Compl., Exh. A, pp. 5-6.[5,6]  Therefore, to the extent ASPIRA claims that RFP-260 provided the terms of its contractual relationship with the School District, that claim must fail.

Finally, even if RFP-260 were deemed to be a contract, and ASPIRA is alleging that the School District breached the term that as a Turnaround Team ASPIRA would be "responsible for all aspects of restructuring and managing the school awarded," ASPIRA does not allege how the School District breached that provision.  For example, ASPIRA does not allege that the nonrenewal of either the Stetson charter or the Olney charter would strip ASPIRA of its designation as a Turnaround Team.  Similarly, ASPIRA does not allege that RFP-260 provided that ASPIRA would be responsible for restructuring and managing either Stetson or Olney for a term of more than five years.  Indeed, ASPIRA makes no specific claim as to how its designation as a Turnaround Team has allegedly been breached, and absent an alleged breach, the breach of contract claim must fail.

For these reasons, ASPIRA's breach of contract claim should be dismissed.

> **2.    ASPIRA is not a party or third-party beneficiary to either the Olney charter or Stetson charter**

ASPIRA also alleges that it is either a party or third-party beneficiary to the charters issued by the School District to Stetson and Olney.  Compl., ¶¶ 201, 203.  Neither of those assertions is correct, and the exhibits to the Complaint demonstrate that this is incorrect.

---

[5]    According to the terms of the RFP, any contract that ASPIRA may have entered with the Defendants as a result of the RFP process would have terminated on June 30, 2015.  Therefore, any claim for breach of contract would have to have been brought on or before June 30, 2019, or it would be barred by the applicable statute of limitations. See 42 Pa. C.S. § 5525(a)(1) (setting a four-year statute of limitation for "an action upon a contract.").

[6]    RFP-286, to which ASPIRA responded with regards to Olney, had essentially the same terms as RFP-260, except that any contracts were to commence on July 1, 2011, and be for a term of five years.  Compl., Exh. E, p. 6.

The first paragraph of Stetson's charter states that it is "by and between THE SCHOOL DISTRICT OF PHILADELPHIA . . . and the JOHN B. STETSON CHARTER SCHOOL; AN ASPIRA, INC. OF PENNSYLVANIA SCHOOL.  . . .  The School District and the Charter School together are referred to as "the Parties" or separately as a "Party."  Compl., Exh. D, p. 1. Accordingly, it is clear from the charter that Stetson is a separately incorporated Pennsylvania nonprofit corporation operated by a separate board of trustees.  The Stetson charter was executed only by representatives of the School District and Stetson, and not by anyone acting for ASPIRA.  *Id.,* p. 30.

Similarly, the first paragraph of the Olney Charter states that the charter is "by and between THE SCHOOL DISTRICT OF PHILADELPHIA . . . and OLNEY CHARTER HIGH SCHOOL . . .   The School District and the Charter School together are referred to as "the Parties" or separately as a "Party."  Compl., Exh. G, p. 1.  Accordingly, it is clear from the charter that Olney is a separately incorporated Pennsylvania nonprofit corporation operated by a separate board of trustees.  The Olney charter was executed only by representatives of the School District and Olney, and not by anyone acting for ASPIRA.  *Id.,* p. 31.

The Pennsylvania Supreme Court has held that:

> [A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract unless, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Scarpitti v. Weborg,* 609 A.2d 147, 150-51 (Pa. 1992) (internal citations omitted).[7]

---

[7]     In defining when a party become a third-party beneficiary, the Pennsylvania Supreme Court in *Scarpitti* stated that it had previously adopted the Restatement (Second) of Contracts,

Neither Stetson's charter nor Olney's charter includes any expression of intent by the parties to benefit ASPIRA in any way. Both charters merely outline the duties and responsibilities of the charter schools and the School District. In fact, ASPIRA is barely mentioned in either charter. In apparent recognition of this deficiency, ASPIRA alleges that its responses to the RFPs are mentioned in the charters; that the charters incorporate by reference exhibits that include those RFP responses; and that the charters identify ASPIRA's chief executive officer as the person to receive notices on behalf of the charter schools. Compl., ¶¶ 51, 58.[8] Yet ASPIRA does not point to a single provision in either charter or the exhibits attached to the charters that includes an expression of an intention to satisfy an obligation of any party to pay money to ASPIRA or indicate that any party intends to give ASPIRA the benefit of promised performance.[9]

---

§ 302 (1979), as a guide for analysis of third party beneficiary claims in Pennsylvania. That section states:

> **§ 302 Intended and Incidental Beneficiaries**
> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1979).

[8]    Paragraph numbers 48-52 are duplicated in the Complaint. Compl., pp. 12-13. This citation references the first Paragraph 51.

[9]    With respect to ASPIRA's contention that the charters include an expression of intent to benefit ASPIRA because they include ASPIRA's chief executive officer as the person to receive notices on behalf of the charter schools, this should not give the Court pause. ASPIRA was the *management company* for these charter schools. One would expect that a charter school would want notices related to the charter sent to the charter school's management company.

In *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.,* the Superior Court considered a claim by a plaintiff that it was a third-party beneficiary of a contract.  In rejecting the claim, the court noted that the contract did not show an intent to make the plaintiff-appellant a third-party beneficiary to the agreement, but rather specifically rejected the idea by including a clause disclaiming any third-party beneficiaries. *Ira G. Steffy & Son, Inc.,* 7 A.3d 278, 288 (Pa. Super. 2010).  The Stetson and Olney charters include a similar clause:

> **No Third-Party Beneficiary Rights.**  No third party, whether a constituent of the School District or otherwise, may enforce or rely upon any obligation of or the exercise of or the failure to exercise any right of the School District or the Charter School in this Charter.  This Charter is not intended to create any rights of a third party beneficiary; except, however, the SRC and its respective members are intended beneficiaries of the indemnification provisions, sovereign, governmental and official immunity, as each may apply, and limitation of liability provisions in this Charter.

Compl., Exh. D, p. 27; Exh. G, p. 28.  Accordingly, it is clear that ASPIRA is neither a party to nor a third-party beneficiary of any contract with the School District, and ASPIRA's breach of contract claim should be dismissed.

### D.    ASPIRA Fails to State A Claim for Violation of Procedural Due Process

ASPIRA contends that the School District violated its procedural due process rights[10] under the U.S. Constitution and the Pennsylvania Constitution.[11]  *See* Compl., ¶¶ 206-215.  To state a procedural due process claim under Section 1983, a plaintiff must allege that (1) it was

---

[10]    The Complaint does not specifically identify the claim as procedural due process rather than substantive due process.  However, the nature of the claims regarding Defendants' actions in conducting nonrenewal proceedings for Stetson and Olney (*see* Compl., ¶ 210) indicate that the claim is for procedural due process.

[11]    The Pennsylvania Supreme Court has determined that "the requirements of Article I, Section 1 of the Pennsylvania Constitution are not distinguishable from those of the 14th Amendment."  *Pa. Game Comm'n v. Marich*, 666 A.2d 253, 255 n.6 (Pa. 1995). Accordingly, this Court has applied the same analysis to both claims.  *See, e.g.*, *Germantown Cab Co. v. Philadelphia Parking Auth.*, No. CIV.A. 14-4686, 2015 WL 1954163, at *5 (E.D. Pa. Apr. 30, 2015).

deprived of an interest encompassed within the Fourteenth Amendment's protection of life, liberty, and property; and (2) the procedures available to the plaintiff did not provide due process of law. *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000). Therefore, the Court must first determine whether Plaintiff suffered a deprivation of a protected property or liberty interest.

ASPIRA claims to have "substantial property and liberty interests" in the charters that are protected by the U.S. Constitution. Compl., ¶¶ 52, 60, 183. That is demonstrably untrue. First, any claim of a "liberty interest" must be dismissed, as liberty interests are those rights concerning avoiding bodily restraint as well as certain other rights, such as the rights to engage in certain occupations, or to marry, etc. *See e.g.*, *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923) (providing an outline of the contours of liberty interests); *see also Lawrence v. Texas*, 539 U.S. 558, 564 (2003) (reviewing cases addressing liberty interests).

Furthermore, ASPIRA does not enjoy a property interest in the charters of the Charter Schools, as ASPIRA is not a party to any of the charters – the charters are only are between the School District and each charter school only. The types of interests protected as "property" are varied. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982). Not every state or municipal law, regulation, or ordinance creates a constitutionally protected entitlement. *See Clark v. Township of Falls*, 890 F.2d 611, 620 n.4 (3d Cir. 1989) ("A property interest is no more created by the mere fact that a state has established a procedural structure than is a liberty interest.") Rather, "the hallmark of property . . . is an individual entitlement grounded in state law which cannot be removed except 'for cause.'" *Logan*, 455 U.S. at 432. In this case, ASPIRA points to no law or other authority granting it a protected property interest, nor is any such authority apparent. To the extent that ASPIRA seeks to rely on the CSL, that law creates no property

interest for management companies.  As a matter of law, ASPIRA has no protected property interest in any of the Charter Schools' charters.

Even if Plaintiff could show that it has a protected property interest, its procedural due process claim must be dismissed for failure to allege that it was not provided with due process in connection with that property interest.  Plaintiff merely alleges in conclusory fashion that the "ASPIRA has been wrongfully deprived and is at risk of wrongful deprivation of its protectable interests through the procedures used against it . . . ."  Compl., ¶ 211.  A plaintiff must do more than recite the elements of a cause of action and then make a blanket assertion of an entitlement to relief under it.  Instead, a plaintiff must make a factual showing of its entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

First and foremost, it must be remembered what Plaintiff is in this matter:  the management company for the charter holders.  Stetson and Olney are not parties to this matter, so their due process rights are not at issue.  As the management company for the Charter School, Plaintiff does not have any constitutionally protected due process rights.  Certainly, ASPIRA has not alleged that it has any such rights that would pertain to the possible nonrenewal of the Stetson charter or the Olney charter.[12]  ASPIRA seeks to paint a picture in which it allegedly did not receive notice of the nonrenewal hearings and then had no way to participate in the proceedings once it learned of them.  Yet the very Complaint itself reveals that allegation cannot

---

[12]    The CSL allows a charter school "reasonable opportunity to offer testimony" in any nonrenewal proceedings.  24 P.S. 17-1729-A(c).  The CSL does not provide such an opportunity to a management company or any other party that has a business interest in the charter school maintaining its charter.  If every party with any business interest were deemed to have a property interest in a charter, then hypothetically every vendor contracting with a charter school would have to be permitted to offer testimony in opposition to nonrenewal.  Such tenuous connections do not begin to rise to the level of a protected property interest.

be true.  As management company for Stetson and Olney, ASPIRA was informed when the schools were notified of the scheduling of nonrenewal proceedings.  ASPIRA admits that it filed a request to intervene in the March 12, 2019 hearing on March 1, 2019.  Compl., ¶¶ 141-42.

ASPIRA was not entitled to any notice as ASPIRA has no property interests in the Stetson and Olney charters.  As a matter of law, the parties to a nonrenewal proceeding are the School District and the charter school, and not a management company.  Although ASPIRA was not permitted to formally participate in the hearings because it is not the charter holder, representatives of ASPIRA attended all 16 hearing days of the nonrenewal proceedings, and ASPIRA employees testified in the hearings on behalf of Olney and Stetson.  To the extent that ASPIRA's interests aligned with Stetson and Olney, ASPIRA's interests were represented at the hearings by Stetson and Olney.  Furthermore, as provided by state law (24 P.S. § 17-1729-A(c)), the Board allowed well over 30 days for the public – including ASPIRA – to provide comments to the Board.  So ASPIRA received due process – actual notice and a chance to respond – in the form of public notice of the nonrenewal hearings and an opportunity to present its comments to the Board.

The U.S. Supreme Court "has never employed an actual notice standard in its jurisprudence; rather, its focus has always been on the procedures in place to effect notice." *United States v. One Toshiba Color Television*, 213 F.3d 147, 155 (3d Cir. 2000).  More importantly, ASPIRA was not entitled to any notice as it has no property interest in the charters. Therefore, ASPIRA's claim for a violation of procedural due process must fail.

### 1.     This matter is not ripe for decision

Even if this Court were to recognize ASPIRA as having rights under any of the Charter Schools' charters, no such right has been violated as all four Charter Schools are still in operation at this time.  Accordingly, Plaintiff has suffered no injury at all at this point.

"The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief."  *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1462 (3d Cir. 1994).  "In some circumstances the ripeness requirement is drawn from Article III limitations on judicial power and in others from prudential limitations." *NE Hub Partners, L.P. v. CNG Transmission Corp.,* 239 F.3d 333, 341 (3d Cir. 2001).

The Supreme Court instituted a two-step test for determining ripeness, which looks at: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration."  *Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 105 (1977).  Where a dispute arises under circumstances that permit administrative review, as in the case here before the Board of Education with the opportunity for further review under the exclusive jurisdiction of CAB, final administrative determination is favored under the ripeness doctrine.  *Peachlum v. City of York,* 333 F.3d 429 (3d Cir. 2003).  The basic reason for such determination is to prevent the courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements" over administrative problems, and to enable the agency to proceed without judicial interruption until an administrative determination has been formalized.  *Abbott Labs.,* 387 U.S. at 148.  In many instances, a claim will be deemed unfit for adjudication until administrative appeals have been completed, because the administrative tribunal might work out the intricacies of an area of law in which it enjoys special expertise.  *Id.*

In this case, CAB has not yet had an opportunity to render an opinion regarding any of the Charter Schools' charters.  Furthermore, the Board of Education has not yet even voted on the recommendations to not renew the Stetson charter and the Olney charter.[13]

Moreover, even if the Board of Education were to vote tomorrow to not renew the Stetson charter or the Olney charter, there would be no hardship for Plaintiff.  That is because Stetson and Olney would remain open at least until CAB considered any appeal of the Board of Education's decision, assuming the Charter Boards of Olney and Stetson respectively decided to exercise their rights to appeal.  And then CAB's decision would be subject to possible appeal to the Commonwealth Court.  Accordingly, Plaintiff has failed on both prongs of the *Abbott Labs* ripeness test.  Therefore, the Complaint must be dismissed.

**2.      The CSL provides exclusive review of a school board decision not to renew a charter**

ASPIRA is trying to interfere with the statutory review procedures established by Pennsylvania law.  The CSL provides that CAB "shall have the exclusive review of a decision not to renew or revoke a charter."  24 P.S. § 17-1729-A(d).  In this case, there is not yet even a nonrenewal decision to appeal to CAB.

---

[13]      To the extent that the School Board has not taken any action on the recommendations for nonrenewal of the Stetson and Olney charters, ASPIRA's claim for a violation of due process must necessarily hinge on the actions of some unnamed School District employee or entity other than the School Board.  As such, Plaintiff has failed to allege any facts that would invoke *respondeat superior* liability on the School District.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").  However, because this matter can be dismissed on the grounds that it is not ripe for decision, the Court need not address the *Monell* issue.

The Commonwealth Court has stated, "It has long been established that '[w]here a remedy is provided by an act of assembly, the directions of the legislation must be strictly pursued and such remedy is exclusive.'" *Phillips v. State Tax Equalization Bd.,* 948 A.2d 889, 893 (Pa. Commw. 2008) (*quoting Lurie v. Republican Alliance,* 192 A.2d 367, 369 (Pa. 1963)); *see also Funk v. Dep't of Envtl. Prot.,* 71 A.3d 1097, 1101 (Pa. Commw. 2013) ("where the legislature has provided an administrative procedure to challenge and obtain relief from an agency's action, failure to exhaust that remedy bars this Court from hearing claims for declaratory or injunctive relief with respect to that agency action"). Therefore, since the CSL grants CAB the exclusive review of a decision not to renew a charter, an appeal to CAB is the exclusive remedy for any party aggrieved by a school district's decision not to renew a charter. In this case, the Board of Education has not even voted yet on the nonrenewal recommendation, so the matter has not been presented to CAB for review.

Plaintiff effectively seeks to have this Court usurp the province of both the Board of Education and CAB in violation of the Pennsylvania statutory provision granting exclusive review to CAB. Accordingly, the Complaint must be dismissed with prejudice in its entirety.

### E. The Board of Education Is Not a Separate Entity and Must Be Dismissed

One of the Defendants in this litigation is the "Philadelphia Board of Education." That is improper because the Board of Education cannot be sued in its own name. Federal courts across Pennsylvania have held that a suit against both a school district and a school board is improper, because state law allows suits against school districts as political subdivisions, but not against school boards. *Smith v. Warwick Sch. Dist.,* No. CV 15-442, 2016 WL 3854586, at *1 (E.D. Pa. July 8, 2016) (holding that a school district's board of directors is not a political subdivision that exists independently from the district itself); *E.B. v. Woodland Hills Sch. Dist.,* No. CIV.A. 10-

0442, 2010 WL 2817201, at *4 (W.D. Pa. July 16, 2010) ("Sub-units of municipal government entities are unnecessary parties.  Therefore, the Board of School Directors is a redundant party, as the School District . . . would ultimately be liable for any judgment entered . . . ."); *Glickstein v. Neshaminy Sch. Dist.,* No. Civ. A. 96-6236, 1997 WL 660636 at *3 (E.D. Pa. Oct. 22, 1997) (holding that a school board could not be sued in its own name, because Pennsylvania Rules of Civil Procedure 2102(b) and 76 do "not include a board of school directors among the political subdivisions that may be sued."); *Young v. Pleasant Valley Sch. Dist.,* No. CIV.A. 3:07CV854, 2008 WL 417739, at *10 (M.D. Pa. Feb. 13, 2008).

Supporting this conclusion is the School Code of 1949, which states only that "each school district shall have the right to sue and be sued in its corporate name."  24 P.S. § 2-213. There is no provision in the School Code that school boards can be sued as a separate entity. Accordingly, this Court should dismiss all claims against the Board of Education with prejudice.

F.     **Plaintiff Has Failed to Join Indispensable Parties**

This matter must also be dismissed because Stetson, Olney, Hostos, and Pantoja are all indispensable parties but have not been named in this action.  Fed. R. Civ. P. 19(a) states in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

In this litigation, Defendants may be subjected to inconsistent obligations, and the Charter Schools potentially face adjudication of their rights without participation.  For example, if the Board of Education were to vote to not renew the charter of any of the Charter Schools and the affected schools were to appeal to CAB, the decision rendered by CAB might differ from this Court's ruling on ASPIRA's prayer for relief to enjoin the School District from not renewing the charter of Stetson and the charter of Olney and to renew all of the Charter Schools' charters for five years.  *See* Compl., p. 45.  Alternately, one of the Charter Schools might wish to surrender its charter and close, but it might be prevented from doing so as a result of ASPIRA's actions. This would be an irrational result, especially since the CSL does not even provide ASPIRA with standing to appeal to CAB or otherwise seek the requested relief.

Furthermore, ASPIRA alleges that it is a co-obligee[14] of the Stetson and Olney charters. Therefore, Stetson and Olney must be joined in this litigation.  The Third Circuit recognized a distinction between co-obligees and co-obligors in the context of Rule 19(a) in *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 408 (3d Cir. 1993).  In *Janney,* the court was faced with the question of whether Rule 19(a) required joinder of a co-obligor to a contract. *See id.* at 402.  In its analysis the court explained that generally a co-obligor was not necessary; however, co-obligees usually are indispensable parties.  *Id.* at 413.  The court pointed to one commentator's explanation that "[j]oint obligees . . . [as compared to joint obligors], usually have been held indispensable parties and their nonjoinder has led to a dismissal of the action."  *Id.* (*citing* Federal Practice & Procedure § 1614 at 182-85).  Additionally, the Advisory Committee note to Rule 19(a) explains that:

---

[14]      An obligee is "[o]ne to whom an obligation is owed." *See* Black's Law Dictionary 1106 (8th ed. 2004).

Clause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter.

*Bank of Am. Nat'l Trust & Savs. Assoc. v. Nilsi,* 844 F.2d 1050, 1055 n.5 (3d Cir. 1988) (*citing* Fed. R. Civ. P. 19(a) Advisory Committee note to the amended rule).

Even if ASPIRA were a party or third-party beneficiary to the Charter Schools' charters, the Charter Schools are each co-obligees under their respective charters.  Any duty allegedly owed to ASPIRA under the charters were also owed – and more directly – to the Charter Schools.  The claims that are being pursued in this action relate to the conduct of Defendants in relation to all of the Charter Schools.  Therefore, adjudication of this action absent the non-joined signatories to the charters will not further the public interest of preventing lawsuits on the same essential matter.  *See also Dickson v. Murphy,* 202 F. App'x 578, 580-81 (3d Cir. 2006) (upholding dismissal under Rule 19(a) where co-obligees were not joined).

For all of these reasons, this matter must be dismissed for failure to join the four Charter Schools as indispensable parties.

### G.     Issues Regarding Damages Claimed By Plaintiff

#### 1.     Monetary damages are not permitted on claims made pursuant to the Pennsylvania Constitution

In Count II of the Complaint, ASPIRA alleges a cause of action for violation of due process pursuant to the Pennsylvania Constitution.  Compl., ¶ 208.  In the prayer for relief in Count II, ASPIRA seeks "all damages, including but not limited to compensatory, nominal, and punitive damages, in the maximum amount allowable by law."  *Id.*, p. 47.  As a matter of law, ASPIRA is not entitled to such damages.  No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania

Constitution.  *See Jones v. City of Philadelphia,* 890 A.2d 1188, 1208 (Pa. Commw. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")  Indeed, other federal courts have found that the issue of whether any direct right of action exists under Article I of the Pennsylvania Constitution is unclear under Pennsylvania case law.  *See e.g.*, *Mulgrew v. Fumo,* No. 03-CV-5039, 2004 WL 1699368 (E.D. Pa. July 29, 2004) ("declining to exercise supplemental jurisdiction "[d]ue to this unsettled issue of law, as to whether such a direct right of action exists . . . .").  In *Pocono Mountain Charter School v. Pocono Mountain School District,* the Third Circuit noted that this Court "properly dismissed the plaintiffs' claims for monetary relief under the Pennsylvania Constitution."  *Pocono Mountain,* 442 Fed. App'x 681, 687 (3d Cir. 2011).  In this case, the Court must also dismiss Plaintiff's claims for monetary relief under the Pennsylvania Constitution against all Defendants.

### 2.    Punitive damages are not available in this case

In the Complaint, ASPIRA seeks relief in the form of punitive damages against the School District as to Count I and against Defendants as to Count II.  Compl., pp. 42, 47.  To the extent that any claims against Defendants survive this motion, punitive damages are unavailable against a public entity, and therefore, are unavailable against the School District or the Board of Education, named only in its official capacity.  In *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), the U.S. Supreme Court held that allowing punitive damages against public entities violated public policy.  In pertinent part, the Court reasoned:

> Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct.  If a government official acts knowingly and maliciously to deprive others of their civil rights, he may become the appropriate object of the community's vindictive sentiments.  A municipality, however, can have no malice independent of the malice of its officials. Damages awarded for

*punitive* purposes, therefore, are not sensibly assessed against the government entity itself.

*Id.* at 267 (emphasis in original; citations omitted); *see also Bolden v. SEPTA,* 953 F.2d 807, 830 (3d Cir. 1991) (holding that a regional transit authority "like a municipality, is immune from punitive damages under Section 1983"); *Agresta v. Goode,* 797 F. Supp. 399 (E.D. Pa. 1992) (punitive damages not available against a municipality or municipal officials acting in their official capacities).  Furthermore, punitive damages are not available on a claim for breach of contract in Pennsylvania.  *See e.g., DiGregorio v. Keystone Health Plan East,* 840 A.2d 361, 370 (Pa. Super. 2003) (observing that punitive damages are "inconsistent with traditional contract theories").

Accordingly, should any claims against the School District or Board of Education survive the motion to dismiss, ASPIRA cannot recover punitive damages.

## VI.    CONCLUSION

For the reasons stated above, the School District and Board of Education respectfully requests the Court to grant the motion and dismiss all claims in the Complaint with prejudice.

Respectfully submitted,
LEVIN LEGAL GROUP, P.C.

Date:  October 7, 2019

*/s/  David W. Brown*
Allison S. Petersen (PA 86335)
Paul J. Cianci (PA 82717)
David W. Brown (PA 201553)
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
(215) 938-6378
apetersen@levinlegalgroup.com
pcianci@levinlegalgroup.com
dbrown@levinlegalgroup.com

*Attorneys for Defendants*