Contract No. _____/F11

School Reform Commission
Resolution No. SRC-____
August 17, 2011

# CHARTER FOR

## ONLEY CHARTER HIGH SCHOOL

**This Charter** (the "Charter") is made and entered into as of July 1, 2011 (the "Effective Date"), by and between **THE SCHOOL DISTRICT OF PHILADELPHIA** (the "School District"), acting by and through the School Reform Commission (the "SRC"), with its principal place of business at 440 North Broad Street, Philadelphia, Pennsylvania 19130, and **OLNEY CHARTER HIGH SCHOOL**, a Pennsylvania nonprofit corporation (the "Charter School") acting through and by its Board of Trustees (the "Charter Board"), with its principal place of business at 100 W. Duncannon Ave., Philadelphia, PA 19120. The School District and the Charter School together are referred to as "the Parties" or separately as a "Party".

## RECITALS

**WHEREAS**, on December 21, 2001, pursuant to the authority granted under Section 6-691(c) of the Public School Code of 1949, 24 P.S. § 1-101 *et seq.*, as amended (the "School Code"), the Secretary of Education of the Commonwealth of Pennsylvania (the "Secretary") issued a certificate declaring the School District to be in distress, and the SRC was appointed pursuant to Section 6-696 of the School Code, 24 P.S. §6-696, as amended by Act 2001, Oct. 30, P.L. 828, No. 83 ("Act 83"); and

**WHEREAS**, pursuant to Section 6-696 of the School Code, the SRC (i) is responsible for the operation, management and educational program of the School District; (ii) is vested with all powers and duties granted to the board of school directors (the "Board of Education") of the School District; and (iii) is authorized, inter alia, to grant charters and to enter into agreements for the operation of charter schools in accordance with the Charter School Law, 24 P.S. §17-1701-A, *et seq.* (the "Charter School Law") and Act 83; and

**WHEREAS,** pursuant to Section 696 of the School Code, the SRC has the power to approve an application to establish and operate a charter school; and

**WHEREAS,** by Resolution No. SRC-36, dated January 20, 2010, the SRC adopted the Renaissance Schools Initiative Policy ("Renaissance Schools Policy"), which authorized the SRC to grant Renaissance charters as part of the School District's Renaissance Schools Initiative; and

**WHEREAS,** the School District designated certain chronically underperforming School District schools to be Renaissance Schools ("Renaissance Schools"); and

**WHEREAS**, Aspira, Inc. of Pennsylvania ("Turnaround Team") was selected to be a turnaround team as a result of its response to Request for Proposals No. 286, Renaissance Schools Initiative – Year II ("RFP No. 286") to turnaround one or more Renaissance Schools. A copy of RFP 286 is attached hereto at <u>Exhibit A</u>; a copy of the Turnaround Team's response to RFP 286 is attached hereto as <u>Exhibit B</u>.

**WHEREAS**, by Resolution No. SRC-26, dated March 16, 2011, the SRC selected the Turnaround Team to turnaround the Olney East High School ("Olney East High School") and Olney West High School ("Olney West High School"); and

**WHEREAS**, the School Advisory Council ("SAC") for Olney East High School and the SAC for Olney West High School approved the merger of Olney East High School and Olney West High School into one high school to be known as Olney High School by a majority vote of a quorum of SAC members present at properly noticed meetings for the Olney East High School SAC and for the Olney West High School SAC; and

**WHEREAS**, the SAC for Olney East High School and the SAC for Olney West High School requested that the School District merge the two schools into one high school to be known as Olney High School; and

**WHEREAS**, the Turnaround Team submitted a request to the School District to merge Olney East High School and Olney West High School into Olney High School and to grant a charter to Olney Charter High School, Inc; An ASPIRA, Inc. of Pennsylvania School ("Olney Charter High School") to operate a charter school at Olney High School;

**WHEREAS**, the Turnaround Team submitted to the School District a Renaissance Schools Charter Application to operate the Olney  High School as a charter school; and

**WHEREAS**, on August 17, 2011, the SRC adopted Resolution SRC-___ (the "Resolution"), attached hereto as <u>Exhibit C</u> and made a part hereof, which authorized the grant of this Charter for the Charter School; and

**WHEREAS**, the Charter Board is authorized to sign this Charter;

**NOW THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, the School District and the Charter School intending to be legally bound, hereby mutually agree to the above Recitals and the following:

## ARTICLE I.  LEGAL REQUIREMENTS, REPRESENTATIONS AND WARRANTIES; GRANT

A.     <u>**School Reform Commission Resolution**</u>. Resolution No. SRC-____, dated August 17, 2011 is attached hereto as <u>Exhibit C</u> and is made a part hereof.

B.  **Grant of the Charter**.  Subject to all of the terms and conditions set forth in this Charter, the School District grants to the Charter Board this Charter to operate the Charter School as a public school under and pursuant to the Renaissance Schools Policy, the Charter School Law and all other Applicable Laws (as hereinafter defined).

C.  **Legal Requirements Associated With Grant of the Charter**. Prior to the full execution of this Charter, the Charter School has provided the following documentation ("Required Documentation") to the School District, in form and substance acceptable to the School District:

1.  a certified copy of the Articles of Incorporation of the Charter School, and any amendments thereto, certified by the Secretary of State of the Commonwealth of Pennsylvania as of a date reasonably proximate to the Effective Date;

2.  a good standing certificate for the Charter School issued by the Secretary of State of the Commonwealth of Pennsylvania, dated a date reasonably proximate to the Effective Date;

3.  a duly approved Charter Board Resolution, certified by the Secretary of the Charter Board (i) authorizing the execution and delivery of this Charter and the performance of the transactions contemplated hereby, (ii) stating that no members of the Charter Board or their immediate family will have business dealings with the Charter School, and that the Charter Board will comply with the Pennsylvania Public Official and Employee Ethics Act; and (iii) providing the names, addresses (including email addresses), and signatures of the officers of the Charter Board and stating that such persons are authorized to execute and request payments under the Charter.

4.  a copy of the Charter School's current bylaws.  Such bylaws shall describe the method for replacing Board members and officers and shall adopt the requirements set forth in the "Required Management Organization of the Board of Trustees and Requirements for Bylaws", attached hereto as Exhibit D and incorporated herein;

5.  a true, correct and complete dated copy of the Charter School's IRS Form 1023 application for recognition under Section 501(c)(3) of the Internal Revenue Code with a representation as to the date on which the IRS Form 1023 was submitted to the Internal Revenue Service;

6.  a copy of the Charter School's Admissions Policy that complies with the Renaissance Schools Policy, RFP 286 and the Application;

7.  a copy of the Charter School's Student Records Policy for the collection, maintenance, and dissemination of student records as required by 22 Pa. Code Chapter 12;

8.   a copy of the Charter School's Student Code of Conduct that complies with RFP 286 and the Application;

9.   a copy of the School Calendar showing the dates on which the Charter School is in session, the first day of school for students;

10.   a schedule of all 2011-12 Charter Board meetings;

11.   a Certificate of Insurance evidencing all required insurance coverages, in the form required in Article XIV herein and satisfactory to the School District's Office of Risk Management;

12.   the Statement of Assurances, and all Application appendices and attachments referred to therein (collectively, the "Statement of Assurances"), attached hereto as Exhibit E; and

13.   any contracts for the provision of management, consulting or similar services to the Charter School.

D.   Additional Required Documentation.  The Parties acknowledge and agree that as of the Effective Date, the Charter School has not provided to the School District, in the form and substance acceptable to the School District, the following documentation (collectively, the "Additional Required Documentation"):

1.   copies of School District Enrollment Forms signed by the parent or legal guardian of each student enrolled in the Charter School;

2.   copies of Employment Verification Forms, indicating that a sufficient staff, with complete and appropriate criminal and child abuse records checks, and all necessary certifications as required by this Charter and Applicable Laws (as hereinafter defined), have been hired to serve the actual enrollment of the Charter School.

The Parties have agreed that the School District shall execute this Charter as of the Effective Date upon the condition that the Charter School provide the Required Documentation and the Additional Required Documentation to the School District in the form and substance acceptable to the School District, on or before September 30, 2011.

In the event that the Charter School does not provide all of the Additional Required Documentation to the School District in the form and substance acceptable to the School District, by September 30, 2011, the School District shall withhold any and all funding due to the Charter School after October 1, 2011 pursuant to 24 P.S. § 17-1725-A until all Additional Required Documentation is provided to the School District, in the form and substance acceptable to the School District.

E.   **License Agreement for Use of the Olney High School**.  The Parties acknowledge and agree that they entered into an EH-45, Use of Facilities Agreement commencing July 1, 2011 for the Charter School's use of the Olney High School.  The parties shall enter into a license

4

agreement(s) for use of the Olney High School by the Charter School during the Term of the Charter. The School District shall provide a draft license agreement to the Charter as of a certain date and the Charter School shall have no more than forty-five (45) days to execute a final version of the license agreement.

In the event that the Charter School does not execute the license agreement within the forty-five (45) day period in the form and substance acceptable to the School District, the School District shall withhold any and all funding due to the Charter School after the first day of the next month pursuant to 24 P.S. § 17-1725-A until the license agreement has been executed by the Charter School in the form and substance acceptable to the School District.

F.   **Renaissance Charter Application of the Charter School.**  The Renaissance Charter Application and any amendments, including the representations, certifications and assurances set forth therein (collectively, the "Application"), is hereby incorporated in this Charter as if set forth herein in full. The Charter Board represents and warrants that the information provided to the School District in the Application was true, correct and complete when submitted to the School District and remains true, correct and complete as of the Effective Date. To the extent that the Charter Board has modified the Application between the date submitted to the School District and the Effective Date, such modifications are (a) reflected in the body of the original Application, or in an amendment to its original Application, and (b) have been duly approved in writing by the School District. The Application may not be modified after the Effective Date except by an amendment to this Charter duly authorized, executed and delivered by the Parties. The Parties acknowledge and agree that the Application sets forth the overall goals, standards and general operational policies of the Charter Board relating to the Charter School, and that the Application is not a complete statement of each detail of the Charter Board's operation of the Charter School. To the extent that the Charter Board determines to implement specific policies, procedures or other specific terms of operation that supplement or otherwise differ from those set forth in the Application, the Charter Board shall have the right to implement such policies, procedures and specific terms of operation, provided that such policies, procedures and terms of operation are (i) not otherwise prohibited or circumscribed by RFP 286 or any Applicable Law or Laws (as hereinafter defined) or this Charter, and (ii) not materially different form those set forth in the Application. To the extent any conflict exists or arises between the terms of this Charter and the terms of the Application, the terms of this Charter shall govern and control. The Charter Board shall operate the Charter School in conformity with the mission statement set forth in the Application.

G.   **Current Charter School Records**.  In accordance with the Applicable Laws, the Charter School shall maintain on-site at its facility for inspection by the School District and its representatives and agents all of certain current Charter School records ("Current Charter School Records") as set forth on Exhibit F attached hereto and made a part hereof.

H.   **Representations and Warranties**.  The Charter Board represents and warrants to the SRC and the School District that:

1.      It has the power and authority to enter into and perform this Charter; and

5

2.     This Charter, when executed and delivered, shall be a valid and binding obligation of the Charter School, enforceable in accordance with its terms.

3.     There is no claim, action, suit, proceeding, investigation or inquiry pending before any federal, state or other court or governmental or administrative agency, or to the knowledge of the Charter Board or the Charter School, threatened against the Charter Board or the Charter School, or any of the Charter School's or the Charter Board's properties, assets, operations or businesses, that might prevent or delay the consummation of the transactions contemplated by this Charter.

4.     The execution, delivery and performance by the Charter Board and the Charter School of their obligations under this Charter will not (with or without the giving of notice or the lapse of time, or both) (i) violate any provision of the Articles of Incorporation or Bylaws of the Charter School; (ii) violate, or require any consent, authorization, or approval of, or exemption by, or filing under any provision of any law, statute, rule or regulation to which the Charter Board or the Charter School is subject; (iii) violate any judgment, order, writ or decree of any court applicable to the Charter Board or the Charter School; (iv) conflict with, result in a breach of, constitute a default under, or require any consent, authorization, or approval under any contract, agreement or instrument to which the Charter Board or the Charter School is a party, or by which any of their assets are bound; or (v) result in the creation or imposition of any encumbrance upon the assets of the Charter Board or the Charter School.

## ARTICLE II.  APPLICABLE LAWS

A.     **Compliance with Applicable Laws**:

1.     The Charter School shall comply with the Resolution, the Renaissance Schools Policy, common law, court decisions, court orders, the Charter School Law, the Individuals With Disabilities Education Act, 20 U.S.C.S. §1400 *et seq.*, as amended ("IDEA"), the No Child Left Behind Act, P.L. 107-110 ("NCLB"), and all other applicable state, federal and local laws, statutes, codes, ordinances, regulations and guidance as in effect from time to time (the "Applicable Laws").

2.     In furtherance of and without limitation to the covenants contained herein, the Charter School shall comply with all Applicable Laws prohibiting discrimination on the basis of disability, race, age, creed, color, gender, religion, marital status, veteran status, national origin, ancestry and any other protected category or classification as required by law, and shall not unlawfully discriminate in student admissions, hiring and operations.  Any reference in this Charter to any statute or ordinance shall mean such statute, as the same may hereafter be duly amended.

3.     In the event that during the Term of the Charter there are proposals to amend the Renaissance Schools Policy, with SRC permission, the School District will make an effort to provide a copy of the proposed amendments to the Charter School prior to adoption by the SRC.

## ARTICLE III.  TERM

A.   **Term.**  The term of this Charter shall be five (5) years and shall commence on July 1, 2011 and shall end on June 30, 2016 ("Term"), unless revoked or not renewed sooner pursuant to the terms of this Charter and Applicable Laws.

## ARTICLE IV.  OPERATIONS AND MANAGEMENT

A.   **Operation of Charter School.** Subject to 24 P.S. §17-1714-A, the terms of this Charter and Applicable Laws, the Charter Board shall be responsible for the operation of the Charter School and shall decide all matters relating to the Charter School, including but not limited to the following: budgeting, curriculum development, testing, operating procedures, hiring and firing of Charter School staff, contracting with necessary professional and nonprofessional employees and all other powers provided by Applicable Laws.

B.   **School Calendar.**

   1.   The School Calendar shall show the dates on which the Charter School is in session and the first day of school for students in compliance with School District requirements and Applicable Law.

   2.   The Charter School shall use its best efforts to provide the School District with the School Calendar for the following academic year by April 1st of each calendar year in order for School District offices, including without limitation, Transportation and Food Services, to schedule for the provision of services for the next academic year.

   3.   In accordance with Applicable Laws, including but not limited to the requirements of 24 P.S. §17-1715-A (9), the Charter School shall provide a minimum of one hundred eighty (180) days of instruction or nine hundred (900) hours per year of instruction at the elementary level or nine hundred ninety (990) hours of instruction at the secondary level.

   4.   The Charter School shall not remain open for students or staff on Sundays, the Fourth of July, Memorial Day or Christmas Day.

C.   **Legal and Other Documentation. Non-Sectarian Status.**  The Charter Board shall operate the Charter School as a public, non-sectarian, nonprofit corporation during the Term of this Charter and any renewals thereof.

D.   **LEA Status.**   The Charter Board shall operate the Charter School as a Local Education Agency ("LEA") with respect to NCLB, to Child Find pursuant to 22 Pa. Code §14.121, and to the provision of special education services under IDEA.

7

E.    **Transportation.** The School District shall provide transportation services to the students enrolled in the Charter School in accordance with 24 P.S.§ 17-1726-A and any guidance issued by the Department of Education during the Term of this Charter.

F.    **Review of Parental Complaints.** The Charter School shall establish a procedure for reviewing parental complaints regarding the operation of the Charter School.

G.    **Child Accounting Procedures.** The Charter School shall follow the child accounting procedures set forth in 24 P.S. §13-1332.

H.    **Student Accounts.** The Charter Board shall adopt and implement policies and procedures which provide for the handling by the Charter School, as a trustee for the benefit of the Charter School's students for educational purposes, of any funds associated with the activities of the Charter School's student groups, associations or organizations.

I.    **Health Service.** The Charter School shall adopt and implement a plan for providing school health services that complies with 24 P.S. §14-1401 *et seq.* of the Public School Code and other Applicable Laws.

J.    **Management Contracts.** Prior to the execution of any agreement for the management or operation of all or substantially all of the Charter School's functions, or all or substantially all of the Charter School's instructional, curricular and senior administrative functions, including without limitation, special education or behavioral support services (any such agreement, a "Management Agreement"), the Charter Board shall submit a true, correct and complete copy of the proposed Management Agreement in a form satisfactory to the School District.

K.    **Charter Board Membership, Meetings.**

    1.    The Charter Board shall post and maintain in a public or common area of the Charter School, a true, correct and current list of the names of the individual members of the Charter Board. The Charter Board shall promptly and regularly revise such list to reflect any changes in the membership of the Charter Board. The Charter Board shall give notice to the School District (as provided in Section XVIII.M. below) of the names, addresses (including email addresses) and telephone numbers of the individual members of the Charter Board, and shall promptly and regularly give the School District notice of any changes in the membership of the Charter Board.

    2.    The Charter Board shall prior to the commencement of the academic year of the Charter School (i) adopt and duly publish in accordance with Applicable Law the schedule for regular meetings of the Charter Board; (ii) conspicuously post or cause to be posted in a public or common area of the Charter School a true, correct and complete copy of its duly adopted schedule of regular meetings for such academic year; and (iii) give notice to the School District of its duly adopted schedule of regular meetings for such academic year. The Charter Board shall immediately upon the approval or calling of any special or emergency meeting of the Charter Board, conspicuously post or cause to be posted in a public or

8

common area of the Charter School a true, correct and complete copy of all notices or other acts scheduling any such special or emergency meeting of the Charter Board.

L.    **Charter School Facilities.**  The Charter School shall operate a charter school only at the Olney High School at 100 W. Duncannon Ave., Philadelphia, PA 19120.  The Charter School shall not suspend or terminate operations at the School nor relocate from the School without prior approval by the SRC by resolution.

M.    **Confidential and Proprietary Information.**  The Charter School shall keep in strictest confidence all information acquired in connection with or as a result of this Charter as required by Applicable Law.

N.    **Publication Rights.**  The Charter School agrees with regard to publication of reports, studies, or other works, if any, developed during the Term of this Charter, or as a result thereof, that the publication thereof will not contain information supplied to the Charter School by the School District which is confidential, or which identifies students, employees or officers of the School District by name without first obtaining their written consent.  Title to and the right to determine the disposition of any copyrights and copyrightable materials first produced by the Charter School as a result of performance of this Charter shall remain with the Charter School.

O.    **School Advisory Council.**

1.    The Charter School acknowledges that to facilitate community involvement throughout the Renaissance Schools process, a School Advisory Council was formed for each of the schools in the Renaissance Schools, including the Olney High School. The Charter School acknowledges that Advisory Council members will serve as liaisons between the School District, communities, and the Charter School to ensure that Renaissance Schools offer high quality educational options that are aligned with the community's needs and interests.  The School Advisory Council shall serve only in an advisory capacity in providing input and feedback to the Charter School and to the School District.

2.    The Charter School agrees to work with, and address the concerns of, the School Advisory Council for the School during the Term of Charter.  The Charter School acknowledges and agrees that the SRC may revoke or not renew the Charter if the School Advisory Council, no later than January 15, 2016, provides to the Superintendent a recommendation by a majority vote of the members of the School Advisory Council that the School Advisory Council is not satisfied with the performance of the Charter School or wants the School to return to School District management at the end of the initial five-year term of the Charter. The School Advisory Council recommendation shall articulate the reasons for such dissatisfaction or readiness to return the Olney High School to the School District.

## ARTICLE V.  CURRICULUM

A.  **Education and Curriculum Plan**.

  1.  The Charter School shall implement a complete educational program and curriculum ("Educational Plan") which is described generally in the Application.

  2.  The Charter School shall provide for the management, administrative services and professional staff training and technology to implement the Educational Plan, and shall have the discretion to determine textbooks, supplies, equipment and technology necessary therefor.

  3.  The Charter School shall be solely responsible for the costs of providing textbooks, supplies, equipment, technology and the like.

  4.  The Educational Plan may be amended from time to time by the Parties upon agreement in writing.

  5.  The Educational Plan shall prepare students at the Charter School for participation in the Pennsylvania System of School Assessment (the "PSSA") as provided for in 22 Pa. Code Ch. 5 (relating to curriculum), or subsequent regulations promulgated to replace or amend 22 Pa. Code Ch. 5, in the manner in which the School District is scheduled to participate.

B.  **Special Education**.

  1.  The Charter School, as a LEA, shall provide appropriate special education services in accordance with Applicable Laws, to all students enrolled in the Charter School.

  2.  The Charter School shall comply with the "Provision of Special Education Services to Charter School Students: Guidelines," a copy of which is attached hereto as Exhibit E-3 and incorporated as if fully set forth herein.

  3.  Autistic Support and Life Skills Support Programs

      (a)  The Charter School agrees to work with the School District to serve Philadelphia public school students in need of Autistic Support services ("AS Program") and Life Skills Support services ("LSS Program"), whether or not such students live in the Attendance Feeder Pattern Zone (as defined in Paragraph VI.B.2). The Charter School acknowledges and agrees that in considering a placement for a student in need of Autistic Support or Life Skills Support, the School District considers factors such as: least restrictive environment, appropriateness of program, caseload limits and transportation time. The Charter School agrees that if such factors support the School District recommending the Charter School as an option for parent consideration, the School District (i) may recommend the Charter School as an option to the student's parents or guardians; (ii) shall

10

inform the parent or guardian that the Charter School is a neighborhood charter school with a neighborhood admissions policy pursuant to the Renaissance Schools Policy and the Application, but that the student may enroll even if he or she does not live in the Attendance Feeder pattern Zone (as defined in Paragraph VI.B.2); and (iii) shall request that the parent or guardian agree in writing to accept or reject the School District's recommendation of the Charter School as an option as an appropriate school to provide Autistic Support services or Life Skills Support services to the student.

(b)    If a parent or guardian decides that the student should attend the Charter School, the Charter School agrees to enroll the student and to keep the student enrolled even if the student's level of service changes, unless the parent or guardian withdraws the student.  The Charter School shall treat all students in need of Autistic Support or Life Skills Support as students living within the Attendance Feeder Pattern Zone (as defined in Paragraph VI.B.2) for accountability purposes.

(c)    Pursuant to Department of Education regulations, notwithstanding Paragraph V.B.3.a., at no point in time during the Term shall the Charter School enroll more than the following in the four (4) Autistic Support classes in the AS Program and in the three (3) Life Skills Support in the LSS Program:

(i)    Autistic Support:  12 Itinerant and 8 Supplemental

(ii)    Life Skills Support:  20 Itinerant and 20 Supplemental

(d)    In order to track caseloads in the AS Program and the LSS Program, the Charter School agrees that it shall notify the School District in writing prior to placing students in the AS Program or the LSS Program.

(e)    Since the Charter School has agreed to provide the AS Program or the LSS Program and has agreed to enroll students requiring Autistic Support services or Life Skills Support services whether or not the students live in the Attendance Feeder Pattern Zone, if the IEP teams determine that a student requires transportation as a related service and the student's IEP specifies unique transportation requirements for that student (i.e., bus attendant, 1-to-1 supervision, door-to-door accommodations, cab service, etc.), the School District shall pay for the basic transportation costs and the unique transportation requirements solely for students participating in the AS Program or the LSS Program.

4.    The Charter School agrees to provide to the School District a de-identified list of all students enrolled in the Charter School who are attending out-of-Charter School programs, such as approved private schools, including the names and types of programs, the grade levels of such students, and the costs of such

11

placements, by January 31st of every year during the Term of the Charter.  The Charter School further agrees that if a student is in the highest grade at the Charter School, and the Charter School is recommending a more restrictive environment for the student, the Charter School shall notify the School District of the recommendation.

C.    **English Education of English Language Learners.**  The Charter School shall provide appropriate services, in accordance with Applicable Laws, for students who are English Language Learners ("ELL's").

## ARTICLE VI.  STUDENT ENROLLMENT

A.    **Student Enrollment.**  The Charter School may enroll students in grades 9 through 12 with a maximum student enrollment as follows:

School Year 2011-12:  1660
School Year 2012-13:  1765
School Year 2013-14:  1860
School Year 2014-15:  1960
School Year 2015-16:  2045

Under no circumstances may the Charter School enroll more students or enroll students in different grades without SRC approval by resolution.

B.    **Student Admissions.**

1.    Any student who was enrolled in the Olney High School in the School Computer Network ("SCN") on June 30, 2011 shall be considered to be residing in the Attendance Feeder Pattern Zone (as defined in Section VI.B.2) for the Term of the Charter, even if the student does not enroll in the Charter School during the 2011-2012 school year or even if the student returns from a disciplinary school. Once a student has enrolled in the Charter School, such student may remain enrolled in the Charter School even if such student moves to a residence in the City of Philadelphia which is outside the Attendance Feeder Pattern Zone.

2.    Pursuant to the Renaissance Schools Policy, RFP 286 and the Application, the Charter School shall enroll all students who in the immediately prior school year attended feeder schools for the Olney High School, as may be revised by the School District during the Term of the Charter ("Attendance Feeder Pattern Zone") and as delineated on the map attached hereto as Exhibit G and made a part hereof.  The Charter School may not enroll any students who live outside the Attendance Feeder Pattern Zone, except as provided in Section VI.B.3. and Section VI.B.4.

3.    Provided that there is capacity at the Charter School, the Charter School shall enroll students who, through the School District's High School Voluntary Transfer Program, request a voluntary transfer to the Charter School in

accordance with the procedures of the High School Voluntary Transfer Program. The Charter School agrees to provide the School District information on the Charter School's enrollment capacity by grade in connection with the voluntary transfer process.

4.   In the event that the enrollment at the Charter School on February 15, 2013 is at least twenty-five (25) students less than the enrollment at the Charter School on October 31, 2011, the Charter School may submit a written request to the School District by May 1, 2013 to modify the Attendance Zone. The Charter School will be required to complete an attendance zone modification package which shall be developed by the School District. After review of the attendance zone modification package, the School District shall determine in its sole discretion whether to modify the Attendance Feeder Pattern Zone. Any modifications to the Attendance Feeder Pattern Zone shall only involve additions of contiguous areas to the current Attendance Feeder Pattern Zone.

5.   The Charter School may not exclude students based on race, color, familial status, religious creed, ancestry, sex, national origin, handicap or disability.

6.   The Charter School shall enter into the SCN the names and addresses of all students who voluntarily or involuntarily transfer out of the Charter School within five (5) business days of the date of the transfer.

7.   The Charter School shall adopt and submit to the School District an admissions policy that complies with the Renaissance Schools Policy, RFP 286 and the Application.

8.   The Charter School shall submit Enrollment Forms to the School District for each student enrolled in the Charter School within ten (10) days after receipt by the Charter School. Each student's Enrollment Form shall be signed by his or her parent(s) or legal guardian(s).

9.   The Charter School acknowledges and agrees that neither the School District nor the Commonwealth of Pennsylvania shall have any obligation whatsoever to provide any funding in excess of the amount derived from the enrollment limits set forth in this Charter.

C.   **Accounting for and Recording Student Enrollment and Attendance**.

1.   The Charter School shall be responsible for accounting for enrollment and disenrollment, including withdrawals and expulsions, and shall report such data to the School District via the SCN. Subject to 17-1729-A of the Charter School Law, failure to provide timely and accurate student enrollment data may result in revocation of this Charter.

2.   All Enrollment Reports will be disaggregated such that the School District will be able to determine enrollment by factors such as race, family income (to the extent practicable), ELL status and special education exceptionality.

13

3.    The Charter School acknowledges and agrees that it will not charge any fees or costs associated with or in connection to student admissions or enrollment to the School District, any parent, any student or any other person or entity.

4.    The Charter School shall provide to the School District verified attendance information through the SCN or in another electronic form on a monthly basis on or before the 15th of each month for the prior month.  If such attendance information is not provided through the SCN, the Charter School shall provide such attendance information in electronic form by email to the Charter School Office.

D.    **Truancy.**  The Charter School shall comply with all Applicable Laws regarding truancy. The Charter School shall report to the School District in electronic format by email all unexcused absences of any duration greater than three (3) days to the School District within two (2) business days.  The Charter School shall submit to the School District a report for any student after ten (10) consecutive days of unexcused absence, and any such student shall be terminated from enrollment at the Charter School after said ten (10) consecutive days of unexcused absence.  The Charter School and the School District acknowledge and agree that the School District, not the Charter School, bears responsibility for enforcement of truancy laws to the extent provided in Applicable Law. A student whose enrollment at the Charter School terminates for unexcused absence becomes the responsibility of the School District to the extent provided under the laws applicable to truancy and compulsory school attendance, and as regards return to attendance at a school other than the Charter School, provided that the Charter School has discharged its duties under this subparagraph VI.D.  Whether a child terminated from enrollment at the Charter School for unexcused absences may re-enroll at the Charter School shall be determined by the Charter School in its discretion based upon such circumstances and policies, subject to Applicable Law, including the Charter School Law, as the Charter School and the Charter Board, as the case may be, then deem relevant.

E.  **Student Withdrawals, Suspensions and Expulsions**.

1.  The Charter School shall establish a suspension and expulsion policy that is in compliance with the Application and Applicable Laws. The Charter School acknowledges and agrees that it has adopted and will follow the School District's current Code of Student Conduct.

2.  The Charter School shall provide the School District with an annual report containing the names and addresses of all students who are expelled and the reason for each expulsion consistent with the Code of Conduct. This list shall be included in the Annual Report required by this Charter and Applicable Laws.

3.  The Charter School shall provide the School District with an annual report containing the names and addresses of all students who withdrew during the school year and information about the student's new school, if available.

4.  If any student was expelled or withdrew from the Charter School as a result of an Act 26 weapons violation, 24 P.S. § 13-1317.2, the Charter School shall provide to the School District the student's name and documentation related to the incident within two (2) days after the student is expelled or withdraws

F.  **PDE-361 Enrollment Form**.  The Charter Board agrees to provide the School District with a copy of the Charter School's PDE-361 Enrollment Form at the same time it is submitted by the Charter School to the Secretary.

## ARTICLE VII.  PERSONNEL

A.  **Personnel**.

1.  The Charter Board shall be responsible for hiring, firing, supervising and disciplining Charter School staff and shall be responsible for employee relations.

2.  Charter School instructional professional staff, including but not limited to the Principal, teachers and other professional instructional staff shall be direct employees or direct independent contractors of the Charter School; that is, such professional instructional staff may not be employees or independent contractors of management or educational management entities, including but not limited to any entity functioning under a Management Agreement.

3.  Charter School staff shall be subject to the terms and conditions of employment as established by the Charter Board, including the determination of wages, hours and other conditions of employment.

4.  In accordance with Section 1724-A(h)(1) of the Charter School Law, in the event the Charter School dismisses a teacher who is on an approved leave of absence from the School District for the purpose of teaching in the Charter School, the

Charter School shall provide the School District with the following: (1) a written explanation detailing the reasons for the dismissal at the time the dismissal occurs; and (2) a copy of any record developed at any dismissal proceeding conducted by the Charter School.

B.  **Licensure and Qualifications of Staff**.

1.  The Charter School shall ensure that all staff utilized in providing educational services at the Charter School have all necessary licenses, certifications and credentials required by this Charter and Applicable Laws, including without limitation the seventy-five percent (75%) certification requirement under the Charter School Law and the one hundred percent (100%) highly-qualified teacher ("HQT") requirement under the NCLB.

2.  Personnel of the Charter School who provide special education or related services to children with disabilities shall have appropriate certification as required by Applicable Laws.

C.  **Background Clearance and Criminal History Checks**.

1.  The Charter School shall ensure that any personnel who may have direct contact with students shall be required to submit Pennsylvania State Police and federal criminal history record information prior to being employed by the Charter School, in accordance with 24 P.S. §1-111.  This provision shall also apply to individuals who volunteer to work at the Charter School on a part time or full time basis.

2.  The Charter School shall ensure that all applicants for a position shall be required to submit the official clearance statement regarding child injury or abuse from the Department of Public Welfare prior to being employed by the Charter School, in accordance with 23 Pa. C.S. Ch. 63 Subch. C.2.   This provision shall also apply to all others to the extent required by Applicable Law.

## ARTICLE VIII.  STUDENT RECORDS

A.  Except as limited by Applicable Law, and as required under 17-1728-A of the Charter School Law, the Charter School shall, with respect to each student enrolled in the Charter School, maintain and make available to the School District within ten (10) days after receipt of a request (which need not take the form of notice under Article XVIII., Section M. below) therefor, or such shorter period as may be provided under Applicable Law, all information required by the School District, including but not limited to: academic performance, demographic information (to the extent practicable), attendance, transfers, report cards, standardized test results, special education, truancy, disciplinary matters and health, at such times, in such reasonable format or formats, and by such reasonable means as the School District requires of its own public schools according to School District policies.  If the School District requires any of such information at a time, in a format or by a means not specified in School District policy, the School District shall make a request (which in the discretion of the School District may, or may not, take the form of

16

notice under Article XVIII., Section M. below) to the Charter School therefor, stating with reasonable specificity the information required from the Charter School, and the Charter School shall have not less than forty-five (45) days from the date of such request to comply with said request for information, or such shorter period as may be provided under Applicable Law. To enable the Charter School to accumulate, maintain and furnish such information, the School District shall give to the Charter School access to the SCN. The School District and the Charter School each mutually covenant and agree to cooperate in a reasonable manner as to notices, timely response, expense of copying and delivering records, formats of reports and other pertinent matters, in order to facilitate timely exchange of the records and information required under this subparagraph, subject in any event to 17-1728-A of the Charter School Law.

B.     Except to the extent expressly waived by the School District and, as applicable, state or federal authorities, the Charter School shall comply with all Applicable Laws concerning the maintenance and disclosure of student records.

C.     The Charter School shall adopt a policy for the collection, maintenance, and dissemination of student records as required by 22 Pa. Code Chapter 12. Such policy shall include provisions (i) on the disposition of student records in the event the Charter School's charter is not renewed or is revoked and (ii) on the maintenance of student records after a student graduates from the Charter School. Additionally, such policy shall provide that upon transfer of a student from the Charter School to another school within the School District, the Charter School will forward such student's records expeditiously and in accordance with the School District's reasonable instructions.

D.     The Charter School shall comply with all federal student record requirements as outlined in 20 U.S.C. 1232g and the regulations promulgated there under, 34 C.F.R. Part 99 et seq. (commonly known as the Family Educational Rights and Privacy Act or "FERPA"), and in the IDEA regulations, 34 C.F.R. Part 300 et seq. The School District hereby designates employees of the Charter School as having a legitimate educational interest such that they are entitled access to education records pursuant to FERPA. The Charter School, its officers and employees, shall comply with FERPA at all times.

E.     The School District will make available to the Charter School for review any existing copies of student records in its possession which pertain to any students who enroll in the Charter School, including academic records, disciplinary records, Individualized Education Programs ("IEPs") and previous standardized test scores promptly after execution of this Charter and prior to the commencement of each successive academic year. The School District shall maintain its existing records for such period as may be required under any Applicable Law or under applicable School District records retention policies, whichever is the longer, at the School District's expense. The Charter School shall ensure that the information required by the SCN is properly maintained and provided by the Charter School's staff in the manner and at the times required by the School District.

17

## ARTICLE IX.  TESTING, REPORTS AND ASSESSMENTS

A.   **Standardized Tests.**  The Charter School shall administer all required federal, state and local standardized tests in compliance with all Applicable Laws.  The Charter School shall provide classroom instruction which shall include, but not be limited to, instruction on the essential knowledge and skills necessary to achieve course completion or course credit, including end of course examinations (if required by the School District), and scores on PSSA, and PASA (Pennsylvania Alternative State Assessment) where applicable, and all other tests and exams required by Applicable Laws.

B.   **Student Academic Assessments.**  The Charter School agrees to participate in the School District's annual city-wide academic accountability systems by: (1) adopting and administering the most current of the PSSA assessments; (2) participating in accountability systems applicable to all School District schools, including a maximum of one School District predictive assessment test; and (3) participating in the School District's annual reporting systems including the school report card and School Performance Index.  Accountability measures for the Charter School are set forth in RFP 286 and in the Application.  The Charter School has agreed to certain specific performance targets during the Term of the Charter.  Such specific performance targets are attached to and made a part of the Applications and which are set forth in <u>Exhibit H</u> attached hereto and made a part hereof.  During the Term of the Charter, the specific performance targets will be based on the School Performance Index methodology in use at the commencement of the Charter.

C.   **School District Surveys of Charter Schools.**  The Charter School understands that the School District may conduct surveys of charter school administrators, teachers, students and parents as part of efforts to collect information on charter school programs.  The Charter School agrees to participate in and to work cooperatively with the School District on such efforts.

D.   **Charter School Annual Reports.**  By August 1st of each year, the Charter School shall submit through the Pennsylvania Department of Education website or such other means required by Pennsylvania Department of Education the Charter School's complete Annual Report completed in accordance with Applicable Laws, including but not limited to 24 P.S. §17-1728-A and 22 Pa. Code §711.6, in the form prescribed by the Secretary.  The Charter School shall also, upon written request made by the School District, provide the School District with any other records the School District, in its sole and absolute discretion, deems necessary to properly assess the performance and operations of the Charter School.  If not prescribed by the Secretary, each annual report shall include the following documentation, information and data: (i) copies of all insurance declaration pages for all insurance coverages required under this Charter; (ii) copies of building code or safety certificates; (iii) annual student suspension and expulsion data, including but not limited to the full name and address of each expelled student; (iv) the schedule of Charter Board meetings for the ensuing academic year; (v) copies of all policies and manuals pertaining to students and parents, and any revisions thereto, not previously delivered to

the School District; and (vi) a copy of the independent financial audit required under 24 P.S. § 17-1719-A and 24 P.S. § 4-437 by October 15, or such other date as may be specified by the Commonwealth for submission to the Commonwealth of the Charter School's Annual Report.

## ARTICLE X.  ACCOUNTABILITY

A.   To the extent that the Charter School must under the provisions of NCLB or other Applicable Law submit to any Commonwealth or federal agency an accountability plan (any such plan, an "Accountability Plan"), then, not later than the date which is thirty (30) days after the submission of said Accountability Plan to the agency requiring it, the Charter Board shall submit to the School District a true, correct and complete copy of its Accountability Plan.  The Charter School is required to comply with NCLB and must submit to the School District any and all school improvement plans, corrective action plans and any other improvement plans.

B.   Except as may be restricted or directed by Applicable Law or as may be reasonably requested by the Charter School, the School District may treat student information it receives from the Charter School pursuant to this Charter as public information.

C.   The Charter School acknowledges and agrees that failure to meet, in all material respects, the accountability criteria specified in this Charter, in whole or in part, constitutes grounds for nonrenewal or revocation of this Charter:

   1.   <u>Governance and Management</u>.

      a.   The Charter Board shall implement the provisions for publication of Board members names and the current year regular meeting dates as specified in Art. IV, Sec. K.

      b.   The Charter Board shall adopt policies regarding petty cash management and other internal controls, employment of relatives, admissions procedures, promotion and graduation criteria,  parent and public engagement, and due process procedures for student expulsions and staff terminations.

      c.   The Charter Board agrees to maintain a record of its meetings and decisions consistent with the Sunshine Act and the Pennsylvania Nonprofit Law.

      d.   The Charter Board shall adopt policies mandating (i) that the health benefits for employees will be the same as those of School District employees and (ii) that all employees shall be enrolled in the Public School Employee's Retirement System, in accordance with 24 P.S. § 17-1724-A

   2.   <u>Operations</u>.

      a.   The Charter School shall submit a complete Annual Report on the Pennsylvania Department of Education website on or before August 1st of each year.

b.       The Charter School shall maintain (i) the teacher certification level at 75% for *each* year, including special education and administrative certificates, as required by the Charter School Law; and (ii) the one hundred percent (100%) HQT requirement under NCLB.

c.       The Charter School shall obtain FBI, criminal background and child abuse clearances for all staff members prior to employment by the Charter School, in accordance with Applicable Laws.

d.       The Charter School shall report daily attendance and student dismissals within ten (10) days after occurrence, as required by the Charter School Law.

e.       The Charter School shall provide student support services, including without limitation, counseling, health services, and behavioral interventions, consistent with the provision of an optimal learning environment.

3.       Program.

a.       The Charter School agrees to use its best efforts to achieve AYP and the Pennsylvania Value-Added Assessment System ("PVAAS") growth measure consistent with the Pennsylvania Department of Education's Accountability System pursuant NCLB for each year during the five (5)-year Term of this Charter.

b.       The Charter School agrees to fully implement and properly document academic programming and services for special education students and for ELL students, as required by the Pennsylvania Department of Education.

c.       The Charter School agrees to meet the specific performance standards set forth in the Application and attached hereto as Exhibit H.

d.       The Charter School agrees to participate in the School District's annual performance indicator systems, including without limitation the School Report Card and the School Performance Index, and to provide required information to produce results for the systems.  The Charter School understands that any such performance indicator system may be used as one factor to assess the Charter School's academic performance during the Term.

e.       The Charter School agrees to participate in School Quality Reviews as set forth in the Application and attached hereto as Exhibit H.

4.       Financial Accountability.

a.       The Charter School agrees to cooperate fully with all School District audits of the Charter School.

20

b.      The Charter School agrees to provide annually to the School District an independent audit no later than six (6) months after the close of each of its fiscal years.

c.      The Charter School agrees to complete Addendum B (Preliminary Statement of Revenues, Expenditures and Fund Balances) as a part of the Annual Report.

d.      The Charter School agrees to seek health services reimbursements as well as non-resident student reimbursements in a timely manner.

e.      The Charter School agrees that it shall pay to the School District, within sixty (60) days after receipt of written notice from the School District, all monies paid to the Charter School by the School District for resident and for non-resident students who (i) have left the school but who have been carried on the school rolls for longer than ten (10) days, (ii) who reside outside of Philadelphia, or (iii) who are identified on the SCN as special education students but who do not have a legally sufficient IEP or NOREP.

## ARTICLE XI.  BOOKS, RECORDS, AUDITS AND ACCESS

A.      **Maintenance of Books and Records**. The Charter School shall keep accurate and complete books and records of all funds received hereunder in accordance with generally accepted accounting principles, or in such other format and under such other generally applicable standards as may be duly designated by the Pennsylvania Department of Education, subject to the limitations of the Charter School Law.  The Charter School shall maintain its records at one central location and shall maintain and preserve the records and all other documentation relating to this Charter for a period of six (6) years from the end of the Term.  The Charter School shall cooperate with the School District in supplying information and or documentation based on specific issues communicated to the Charter School in advance to the School District or its representatives, in the form and format used by the School District, when needed in order for the School District to meet its reporting obligations under Applicable Laws.

B.      **Audit**.  The Charter School shall conduct an annual audit in accordance with the requirements of Article 24 of the Public School Code.

C.      **School District Access**.  The Charter School shall provide ongoing access to the records and facilities of the Charter School to ensure that the Charter School is in compliance with this Charter and the Charter School Law and that requirements for testing, civil rights and student health and safety are being met.  The School District reserves the right to audit the Charter School's books, records, facilities and operations.

## ARTICLE XII.  FUNDING

A.      The School District shall make monthly payments to the Charter School in accordance with the funding method described in 24 P.S. §17-1725-A.

21

B.      In the event that the School District has, at any time, paid the Charter School more than the sums due under this Charter or under 24 P.S. §17 – 1725-A, the School District shall withhold the amount of overpayment from the subsequent monthly payment or payments to be provided to the Charter School until the School District has recovered the full amount of any such overpayment.

C.      All payment obligations by the School District hereunder shall be unsecured obligations of the School District and the Charter School shall have no lien, security interest, claim or right to any revenues, receipts, accounts or income of the School District whether paid or payable to the School District.

D.      The Charter School shall adopt procedures that comply with the "Required Financial Procedures" attached hereto as Exhibit I and incorporated as if fully set forth herein.

E.      The Charter Board shall pay to the School District an amount for each Charter School student's participation in the School District's extra-curricular activities, in accordance with a fee schedule to be established from time to time by the Parties.

## ARTICLE XIII. TECHNOLOGY.

A.      The School District will provide all necessary software ("Technology") and training to permit the Charter School to have access to the SCN.

B.      The Charter School shall take all necessary steps and precautions to safeguard the Technology from damage, destruction, misuse and theft, and shall maintain appropriate insurance protecting the Technology against damage, destruction, misuse and theft.

## ARTICLE XIV. INSURANCE

A.      **Insurance Requirements**.

        1.      Insurance Requirements.

        All insurance policies required hereunder shall be maintained in full force and effect for the Term of this Charter. Each policy shall contain the provision that there is to be thirty (30) days prior written notice given to the School District in the event of cancellation, non-renewal, or material change to the insurance coverages. A Certificate of Insurance evidencing all insurance coverages as outlined below, shall be provided to the School District for review, seven (7) working days prior to the execution of this Charter. Within thirty (30) days of the Effective Date, certified copies of all insurance policies required by this Charter shall be delivered to the School District for review. The insurance companies indicated as the carriers on the Certificates of Insurance, shall be authorized to do business in the Commonwealth of Pennsylvania, shall have an A.M. Best rating of no less than "A:VIII," and the carriers shall be acceptable to the School District. The School District and the SRC shall be named as Additional Insureds, ATIMA, with respect to all coverages, except Workers' Compensation. The Charter School's liability insurance coverage shall be endorsed to state that its coverage will be primary to any other coverage available to the SRC and School District and its officers, employees and agents,

22

that no act or omission of the School District will invalidate the coverage, and that the insurance company waives subrogation against the School District, and any of the School District's officers, employees and agents and the SRC and any of its members.

2.      The Charter School shall maintain the following insurance policies in full force during the term of this Charter:

(a)     **Commercial General Liability**:

Commercial General Liability coverage, on an occurrence basis, including Contractual Liability, with limits not less than the following:  (a) $2,000,000 General Aggregate (including bodily injury, or property damage or both); (b) $2,000,000 Products – Completed Operations Aggregate; (c) $1,000,000 Per Occurrence; (d) $1,000,000 Personal and Advertising Injury; (e) $1,000,000 Fire Damage or Fire Legal Liability; and $10,000 Medical Expense (any one person).

(b)     **Automobile Liability**:

Automobile coverage with limits not less than the following:  $1,000,000 Combined Single Limit for bodily injury and property damage for all owned autos and/or hired / non-owned autos.

(c)     **Workers' Compensation and Employers Liability**:

(i)     Workers' Compensation coverage for its employees with limits not less than the statutory limits for the Commonwealth of Pennsylvania.

(ii)    Employer's Liability: $500,000 Each Accident–Bodily Injury by Accident;  $500,000 Each Employee-Bodily Injury by Disease; and $500,000 Policy Limit-Bodily Injury by Disease.  Other states insurance including Pennsylvania.

(d)     **Excess /Umbrella Liability**:

The Charter School shall maintain Excess / Umbrella Liability coverage in an amount not less than 5,000,000 per occurrence.  The Excess/Umbrella Policy shall schedule all underlying liability coverages required under the Charter unless a separate 5,000,000 limit is maintained for Professional Liability.

(e)     **Professional Liability/Educators Liability/ Malpractice/Errors and Omissions Insurance.**

Professional Liability/Educators Liability / Malpractice/Errors and Omissions Insurance with limits not less than the following:  (a)

23

$1,000,000 General Aggregate; (b) $1,000,000 Per Occurrence. The Charter School shall obtain a Sexual Molestation and Child Abuse Endorsement.

(f)     **Directors and Officers Liability and Employment Practices Liability**:

The Charter School shall maintain Directors and Officers Liability and Employment Practices Liability Insurance in an amount not less than $1,000,000.

3.     No effect on Indemnity Obligations:

The insurance requirements set forth in this Charter are not intended and shall not be construed to modify, limit or reduce the indemnification obligations set forth below or limit the Charter School's liability to the limits of the policies of insurance required to be maintained hereunder.

## ARTICLE XV.  TERMINATION

A.     **Termination, Nonrenewal or Revocation of Charter**.

1.     Revocation or Nonrenewal.  The School District reserves the right to not renew this Charter at the end of the Term or to revoke this Charter at any time during the Term in accordance with 24 P.S. §17-1729-A and Applicable Laws.

2.     Mutual Written Agreement.  This Charter may be terminated by mutual written agreement prior to the expiration of the Term, which agreement shall state the effective date of termination.  The Charter School and the School District agree that unless the safety and health of the students and or staff is otherwise threatened, the effective date of termination by mutual agreement will be at the end of a semester or academic year.

B.     **Disposition of Assets upon Revocation or Termination:**  After the disposition of any liabilities and obligations of the Charter School, any remaining assets of the Charter School shall be distributed on a proportional basis to the school entities (as defined in 24 P.S. § 17-1703-A) with students enrolled in the Charter School for the last full or partial school year of the Charter School.

## ARTICLE XVI.  INDEMNIFICATION

A.     **Indemnification**.

1.     The Charter School hereby agrees to indemnify and hold harmless the School District, the Board of Education, the SRC, and any governing body authorized to carry out the terms, supervise, or have any control over of this Charter, and their

24

respective members, designees, agents, directors, employees and representatives ("the Indemnified Parties") and, at the option of the School District, defend by counsel approved by the School District in its sole discretion (provided that the cost to the Charter School of such School District counsel shall not exceed the rates then generally paid by the School District to its outside counsel handling comparable matters on behalf of the School District) from and against any and all claims, liabilities, demands, costs, charges, liens, expenses, actions, causes of action, lawsuits, administrative proceedings, (including informal proceedings), investigations, audits, demands, assessments, adjustments, settlement payments, deficiencies, penalties, fines, interests, judgments and or executions, (including without limitation reasonable expenses of investigation, legal fees, and court costs) past and present, known, and unknown, suspected or unsuspected, asserted, or unasserted, in contract, tort, statutory, constitutional, equity or common law, whether or not ascertainable at the time of the execution of this Charter which arise out of the willful or negligent act or omission of the Charter Board, the Charter School or any member, officer, director, employee or agent thereof, or out of any misfeasance, malfeasance or nonfeasance of the Charter School, the Charter Board or its or their members, officers, directors, employees or agents.

2.  The Charter School, for itself, the Charter Board, and the Charter School's members, officers, directors, employees and agents, hereby irrevocably waives and releases any right of or claim for contribution or in recoupment from the SRC or the School District with respect to any claims, liabilities, demands, etc. covered by subparagraph XVI.A.1 above.

3.  The Charter School agrees that the indemnification obligation in this Charter shall survive any termination, expiration or revocation of this Charter.

4.  The Parties agree to cooperate fully with one another in responding to any allegation, claim, lawsuit, administrative action, investigation, audit or demand arising out of this Charter. This obligation shall survive the termination of this Charter and revocation of the Charter. The Charter School and School District agree to notify one another if either Party receives notice of such a matter by providing a copy of the relevant document to the other Party.

B.  <u>School District Statutory Immunity</u>. Any other provision of this Charter to the contrary notwithstanding, the School District, its officers, employees and agents and the members of the School Reform Commission and the Board of Education retain their statutory governmental, official and any other immunity provided pursuant to the laws of the Commonwealth of Pennsylvania, including under 42 Pa. C.S.A. §§ 8501 and 8541 et seq., and do not waive the defenses of governmental and official immunity derived from such laws. The School District does not waive for itself or for its officers, employees, agents and the members of the School Reform Commission and Board of Education any other defenses or immunities available to it or any of them.

**ARTICLE XVII.**

**CERTIFICATION
REGARDING DEBARMENT, SUSPENSION AND
INELIGIBILITY**

A.   **Certification**.  By signing this Charter, in addition to binding itself to the terms and conditions of this Charter, the Charter Board and the Charter School hereby certify for themselves, their principals and including, without limitation, their affiliates, if any, that none of them are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from performing services under any other contract, bid, request for proposals or other governmental contracting opportunity by any federal government department, agency or instrumentality, or any Commonwealth of Pennsylvania department, agency or instrumentality, including any other School District in the Commonwealth of Pennsylvania, or by The City of Philadelphia.

B.   **Notices**.  In the event the Charter School is unable to certify to any of the statements in the above certification, the Charter School shall provide **an immediate written explanation** to the School District representative named in Article XVIII, Paragraph M (Notices) of this Charter.  The Charter School shall provide **immediate written notice** to the School District representative named in Article XVIII, Paragraph M of this Charter if at any time, during the term of this Charter, the Charter School learns that the above certification was erroneous when the Charter School signed this Charter or subsequently became erroneous by reason of changed circumstances.

C.   **Reimbursement of Costs**.  If the Charter School is unable to certify to any statements in the above certification, or has falsely certified, then in that event the Charter School shall reimburse the School District for any and all reasonable costs incurred by the School District as a result of any investigation by the School District, the federal government or the Commonwealth of Pennsylvania concerning the Charter School's compliance with the terms and conditions of this Charter that results in the debarment or suspension of the Charter School.

D.   **Compensation**.  If the compensation paid to the Charter School is derived from federal government or Commonwealth of Pennsylvania grant funds, the Charter School must bill the School District for any outstanding compensation owed to the Charter School within thirty (30) days after the ending date of this Charter.  In the event the Charter School does not bill the School District for the balance of any compensation within said 30 day time period, the School District, in its sole discretion, reserves the right to withhold payment of the balance of the compensation to the Charter School because of the unavailability of federal government or Commonwealth of Pennsylvania funds, in which event the School District shall not be liable to the Charter School for the balance of the compensation.

E.   **Survival**.  This Article XVII shall survive termination of this Charter.

26

## ARTICLE XVIII.  MISCELLANEOUS

A.  **Applicable Law**.  This Charter shall be governed by, and construed in accordance with the laws of the Commonwealth of Pennsylvania notwithstanding any conflict-of-law doctrines of said jurisdiction to the contrary and without aid of any canon, custom or rule of law requiring construction against the draftsman.

B.  **No Waiver.**  No waiver of any provision of this Charter shall be construed to be a waiver of any breach of any other provision and no delay in acting with any regard to any breach of any provision shall be construed to be a waiver of any such breach.

C.  **Venue.**  The Charter School and the School District agree that with respect to any suit, claim, action or proceeding relating to this Charter, other than a proceeding involving the State Charter School Appeal Board (24 P.S. § 17-1703-A), each irrevocably submits to the exclusive jurisdiction of the courts of the Commonwealth of Pennsylvania and the United States District Court sitting in Philadelphia, Pennsylvania.  With respect to any suit, action or proceeding related to this Charter, the Charter School (i) waives any objection it may have to the laying of venue in such proceeding brought in any such court; (ii) waives any claim that such proceeding has been brought in an inconvenient forum and (iii) further waives the right to object with respect to such proceeding that such court does not have jurisdiction over the Charter School.

D.  **Assignment.**  This Charter may not be transferred or assigned by the Charter School.

E.  **Illegal Activities/Conflict of Interest.**  Neither the Charter School nor the Charter Board shall share with or pay to any School District official or employee, and no School District official or employee shall accept, any portion of the funding to the Charter School paid by the School District in connection with this Charter, or any other payment of whatever kind from the School District, except in accordance with the law and School District policy.  The Charter School shall disclose to the School District the name(s) of any School District official or employee sharing in the compensation or fee, or otherwise receiving payment of whatever kind with funds received from the School District.  Any fees or compensation shared by the Charter School and a School District officer or employee in violation of the law or School District policy shall be recoverable from the Charter School as damages.  The Charter School, its staff and members of the Charter Board shall not at any time accept or receive any form of payment, fee, compensation or benefit of any kind whatsoever, including but not limited to, referral or finder's fees, goods or services offered by hospitals, physicians, psychologists or any other healthcare provider for a recommendation or referral of a student to another agency or healthcare provider.   The Charter Board and the Charter School hereby represent and warrant that there is no conflict of interest between any other contracts or any other employment or work and its rights and duties under this Charter.  The Charter School shall advise the School District if such a conflict of interest arises during the term of this Charter.

F.  **Public Official and Employee Ethics Act**.  The Charter School acknowledges that all Charter School trustees and administrators must comply with the Public Official and Employee Ethics Act and that all Charter School trustees and administrators shall submit

their completed Statement of Financial Interests forms by May 1st to the Charter School, with copies to the School District.

G. **No Third Party Beneficiary Rights.**  No third party, whether a constituent of the School District or otherwise, may enforce or rely upon any obligation of or the exercise of or the failure to exercise any right of the School District or the Charter School in this Charter.  This Charter is not intended to create any rights of a third party beneficiary; except, however, the SRC and its respective members are intended beneficiaries of the indemnification provisions, sovereign, governmental and official immunity, as each may apply, and limitation of liability provisions of this Charter.

H. **No Personal Recourse.**

    1.    Any other provision of this Charter or any Addendum or Exhibit to the contrary notwithstanding, the SRC and the School District retain their respective statutory immunity as provided pursuant to the laws of the Commonwealth of Pennsylvania, 42 Pa. C. S. A. §§8501 and 8541.  The Charter School acknowledges that the School District is a local agency, as defined in 42 Pa. C. S. A. §§8501 and 8541 and that the School District does not waive its defense of statutory immunity derived therefrom.

    2.    No personal recourse shall be had for any claim based on this Charter against any member, official, officer, director, employee or agent, past, present or future of the SRC, Board of Education, the School District or any successor body as such, under any constitutional provision, statute, rule or law or by enforcement of any assessment or penalty or otherwise.

I. **Appendices and Exhibits.**  The parties agree to the terms and conditions of this Charter and the Exhibits that are attached hereto and incorporated herein by reference.

J. **Entire Agreement and Modification.**  This Charter supersedes all negotiations and all prior agreements, oral or written, between the Parties and their respective representatives and constitutes the entire agreement between the Parties with respect to the matters set forth herein.  This Charter may not be amended, modified, supplemented or changed in any respect except by written agreement duly executed and signed by all Parties to this Charter.  The recitals set forth in this Charter are hereby incorporated by reference.

K. **Severability**.  The terms of this Charter are severable.  In the event of the unenforceability or invalidity of any one of more of the terms, covenants, conditions or provisions of this Charter under federal state or other applicable law, such unenforceability or invalidity shall not render any other term, covenant, condition or provision hereunder unenforceable or invalid.

L. **Force Majeure**.  Neither party shall be liable if the performance of any part or all of this Charter is prevented, delayed, hindered or otherwise made impractical or impossible by reason of any strike, flood, riot, fire, explosion, war, act of God, sabotage, accident or any other casualty or cause beyond either party's control and which cannot be overcome by reasonable diligence or without unusual expense.

M.   **Notices.**  When notices are required under this Charter, they shall be sent by: (a) registered mail or certified mail, return receipt requested; (b) hand delivery; (c) nationally recognized overnight courier service, or (d) facsimile with an original copy delivered by one of methods specified in (a) – (c) above, to the parties at the address set forth below. All notices shall be effective upon receipt, facsimile notice as evidenced by the confirmation thereof provided by the transmitter's machine.   All notices shall be addressed as follows:

To the School District:              Office of Charter, Partnership and
                                     New Schools
                                     Attn:  Renaissance Schools Office
                                     The School District of Philadelphia
                                     440 North Broad Street, 3rd Floor
                                     Philadelphia, PA  19130

With a courtesy copy to              School Reform Commission
                                     The School District of Philadelphia
                                     440 North Broad Street, 1st Floor
                                     Philadelphia, PA  19130
                                     Attn:   Chair

With a required copy to:             Office of General Counsel
                                     The School District of Philadelphia
                                     440 North Broad Street, Suite 313
                                     Philadelphia, PA  19130
                                     Attention:  General Counsel

To the Charter School:               Alfredo Calderon
                                     Olney High School
                                     100 W. Duncannon Ave.
                                     Philadelphia, PA 19120

With a required  copy to:            _____
                                     _____
                                     _____, PA _____-____
                                     Attention:      _____, Esquire
                                     (___) ___-____

Each party hereto may change one or more of the addresses set forth above for receipt of notices under this Charter, by notice to the other party delivered in the manner set forth in this Section XVIII.M.

N.     **Survival.**      Any and all agreements set forth in this Charter which by its or their nature, would reasonably be performed after termination of this Charter, shall survive and be enforceable after such termination.  Any and all liabilities, actual or contingent, which shall have arisen in connection with this Charter shall survive any termination of this Charter.

O.     **Headings**.  The headings of the provisions and paragraphs contained herein are intended for convenience of reference only and in no way define, limit or describe the scope or intent of this Charter, nor in any way affect the interpretation of this Charter.

P.     **Counterparts.**  This Charter may be executed in counterparts, each of which shall be deemed an original and shall have full force and effect as an original, but all of which shall constitute one and the same instrument.

**IN WITNESS WHEREOF,** the undersigned have executed this Charter the day and year first written above.

THE SCHOOL DISTRICT OF
PHILADELPHIA

APPROVED AS TO FORM:

By: _____

      Robert L. Archie, Jr.
      Chair, School Reform Commission

_____
Assistant General Counsel

OLNEY CHARTER HIGH SCHOOL

ATTEST:

By: Name: _Aracely Rosales_
      Chair
      Board of Trustees

By: Name: _Tamara Newton_
      Secretary
      Board of Trustees

**TABLE OF EXHIBITS**

| | | |
|---|---|---|
| Exhibit A | - | Request for Proposals No. 286, Renaissance Schools Initiative – Year 1 ("RFP 286") |
| Exhibit B | - | Aspira, Inc. of Pennsylvania's Response to RFP 286 |
| Exhibit C | - | SRC Resolution No. SRC-___, dated August 17, 2011. |
| Exhibit D | - | Required Management Organization of the Board of Trustees and Requirement for Bylaws |
| Exhibit E | - | Statement of Assurances |
| Exhibit E-1 | - | RFP 286, Pages 11-16; Section B(7) -- Accountability |
| Exhibit E-2 | - | Performance Targets for Renaissance Schools |
| Exhibit E-3 | - | Provision of Special Education Services to Charter School Students Guidelines |
| Exhibit F | - | Current Charter School Records |
| Exhibit G | - | Attendance Zone Map |
| Exhibit H | - | Charter School's Specific Performance Targets |
| Exhibit I | - | Required Financial Procedures |

## EXHIBIT A

**REQUEST FOR PROPOSALS NO. 286, RENAISSANCE SCHOOLS INITIATIVE – YEAR II ("RFP 286")**

**<u>EXHIBIT B</u>**

**<u>EXHIBIT C</u>**

## EXHIBIT D

**REQUIRED MANAGEMENT ORGANIZATION**
**OF**
**THE BOARD OF TRUSTEES**
**AND**
**REQUIREMENTS FOR BYLAWS**

---

**An affirmative vote of a majority of the members of the Board of Trustees of the Charter School, duly recorded, ("Board of Trustees" or "Board") showing how each member voted, shall be used in order to take action on the following subjects:**

      *     School calendar (must include 990 hours or 180 days of instruction for secondary students [grades 7 – 12] and 900 hours or 180 days for elementary students [grades 1 – 6]. School cannot be kept open for students or staff on Sundays, Fourth of July, Memorial Day or Christmas).

           *     Adopting textbooks.

           *     Appointing or dismissing charter school administrators.

           *     Adopting the annual budget.

           *     Purchasing or selling of land.

           *     Locating new buildings or changing the location.

           *     Creating or increasing any indebtedness.

           *     Adopting courses of study.

           *     Designating depositories for school funds.

      *     Fixing salaries or compensation of administrators, teachers, or other employees of the charter school.

      *     Entering into contracts with and making appropriations to an intermediate unit, school district or Area Vocational/Technical School for the charter's proportionate share of the cost of services provided or to be provided by the foregoing entitles.

**Requirements for the bylaws:**

1.      The bylaws must contain a provision for "failure to organize or neglect of duty." Specifically, the bylaws must outline a removal procedure for the failure of a board member to perform his or her duties as outlined in the Charter School Law.

2.      No board member shall as a private person engage in any business transaction with the charter school of which he or she is a trustee, be employed in any capacity by the charter school of which he or she is a trustee, or receive from such charter school any pay for services rendered to the charter school.

3.      A charter school board of trustees shall have a designated treasurer who shall receive all funds including local, state and federal funds and privately donated funds. The treasurer shall also make payments out of the same on proper orders approved by the board of trustees, signed by the president or vice-president of the board. The treasurer may pay out such funds on orders which have been properly signed without the approval of the board first having been secured for the payment of amounts owing under any contracts which shall previously have been approved by the board, and by which prompt payment the charter will receive discount or other advantage.

4.      Procedures for dismissal of an employee must be contained in the bylaws.

**EXHIBIT E**
**STATEMENT OF ASSURANCES**

**FOR RENAISSANCE SCHOOLS INITIATIVE CHARTER SCHOOLS**

**FOR 2011-12**

By authorized signature below, Olney Charter High School ("Charter School") hereby agrees that the following terms and conditions shall apply if a charter is granted to the Charter School for the Olney High School, pursuant to the Renaissance Schools Initiative Charter Application as part of Request for Proposals No. 286, Renaissance Schools Initiative – Year II ("RFP No. 286"). The Charter School acknowledges and agrees that this Statement of Assurances is incorporated in and made a part of the Renaissance Schools Initiative Charter Application, and the Charter School agrees to abide by all the terms, provisions and requirements of RFP No. 286 with respect to the RFP process and the Turnaround Team selection process, and in the Charter School's operation of any Renaissance School, if selected. Charter School understands that any material deviation from any of the terms, provisions or requirements of RFP No. 286 or such terms, provisions or requirements set forth below shall be cause for revocation or nonrenewal of a charter by the School Reform Commission ("SRC") awarded under RFP No. 286:

1. The Charter School will comply with all applicable federal and state laws and regulations and the provisions and requirements of RFP No. 286, notwithstanding any contrary provisions in the Charter School Law.

2. The Charter School will be nonsectarian in all operations.

3. The Board of Trustees of the Charter School ("Charter Board") shall be authorized to sign a written charter with the School District of Philadelphia ("School District"). The Charter School shall submit to the School District the formal resolution adopted by the Charter Board.

4. The Charter School shall provide a minimum of one-hundred eighty (180) days of instruction or nine hundred (900) hours per year of instruction at the elementary level, or nine hundred ninety (990) hours per year of instruction at the secondary level.

5. Prior to employing any individual or engaging any contractor and contractor's employees who shall have direct contact with students, the Charter School shall ensure that criminal history and child abuse/injury records are obtained and reviewed in compliance with §1-111 of the Public School Code and 23 Pa. C.S.A. subchapter C2, regarding background checks.

6. The Charter School shall provide the School District with access to all of its records and facilities to ensure that the Charter School is in compliance with its written charter.

7. The Charter School shall utilize a management structure that is consistent with the Renaissance Schools Initiative Charter School Application and with Exhibit A: Required Management Organization of the Board of Trustees and Requirements for Bylaws.

8. The Charter School shall enroll and disenroll each student using the School District's School Computer Network.

9. The Charter School shall abide by the performance standards and enrollment requirements set forth in its Renaissance Schools Initiative Charter School Application and in RFP No. 286. The Accountability Section of RFP 286 is attached hereto as Exhibit E-1 and is made a part hereof.

10. The Charter School acknowledges and agrees that during every year of the term of the charter, the Charter School shall meet the performance targets for Olney High School as set forth in Exhibit E-2 attached hereto and made a part hereof. The Charter School acknowledges and agrees that failure to meet such performance targets for any year during the term of the charter shall be grounds for revocation or non-renewal of the charter.

11. The Charter School agrees to work with, and address the concerns of, the School Advisory Council for the Olney High School during the Term of Charter. The Charter School acknowledges and agrees that the SRC may revoke or not renew the Charter if the School Advisory Council, no later than January 15, 2016, provides to the Superintendent a recommendation by a majority vote of the members of the School Advisory Council that the School Advisory Council is not satisfied with the performance of the Charter School or wants the Olney High School to return to School District management at the end of the initial five-year term of the Charter. The School Advisory Council recommendation shall articulate the reasons for such dissatisfaction or readiness to return the Olney High School to the School District.

12. The Charter School shall serve all eligible children who reside in the catchment area of the school regardless of whether the child was residing in the catchment area and/or attending the neighborhood school at the time of conversion into a Renaissance School. The Charter School shall adopt an admissions policy that reflects this requirement and shall ensure that there will always be space available for resident students who reside in the catchment area to enroll.

13. The Charter School shall provide evidence that it has incorporated a charter entity as a Pennsylvania nonprofit corporation and that the entity has applied to the Internal Revenue Service ("IRS") for federal tax exemption. The Charter School shall provide to the School District a copy of its federal exemption letter after receipt from the IRS.

14. The Charter School shall submit the following to the School District:

    a.      Employment Verification forms indicating that a sufficient staff with complete and appropriate criminal and child abuse records checks have been hired to serve the actual enrollment of the charter school;

    b.      Evidence that the Charter School has obtained the insurance coverages as required by the Charter.

15. The Charter School shall adopt detailed procedures for suspension and expulsion that comply with the Public School Code and the School District Code of Student Conduct.

16. The Charter School will meet the legal, professional and ethical standards and applicable laws for maintaining school records and confidential student records, and for disseminating information.

17. The Charter School will follow State child accounting procedures (24 PS § 13-1332).

18. The Charter School will comply with the Provision of Special Education Services to Charter School Students: Guidelines, attached hereto as Exhibit E-3.

19. If the Charter School plans to offer food services, federal and state regulations for student participation must be followed.

20. The Charter School shall adopt a plan for providing school health services that complies with Article XIV of the Public School Code and shall maintain student health and immunization records in compliance with applicable law.

21. The Charter School shall offer a health benefits package the same as that of the School District, as required in Section 1724-A of the Charter School Law.

22. The Charter School shall develop a purchasing procedure that addresses a competitive way to purchase goods and services and shall have appropriate board oversight of all spending in the Charter School's bylaws.

23. The Charter School shall follow the financial procedures listed in Charter School Application Exhibit A: Required Financial Procedures.

24. The Charter School shall have a plan for regular financial reviews and audits in accordance with Section 1719-A of the Charter School Law.  The Charter School shall submit annual reports to the Pennsylvania Department of Education and to the School District by August 1st of every year.

25. The Charter School shall provide copies of any amendments to the Charter School's Articles of Incorporation or Bylaws to the School District within thirty (30) days after such amendments have been approved by the Charter Board.

_____          8/22/2011
Signature of Authorized Representative of Charter School          Date

## EXHIBIT E-1

**RFP 286, PAGES 11-16**
**SECTION B(7) -- ACCOUNTABILITY**

## **EXHIBIT E-2**

### **Performance Targets for Renaissance Schools**

1. By 2013, Renaissance Schools must have a School Performance Index Ranking (SPI) Ranking equal to or less than an "8," based on 2009-2010 SPI cut score values for each SPI component.

2. By 2014, Renaissance Schools must have an SPI Ranking equal to or less than a "7," based on 2009-2010 SPI cut score values for each SPI component.

3. By 2015, Renaissance Schools must have an SPI Ranking equal to or less than a "5," based on 2009-2010 SPI cut score values for each SPI component.

Utilizing the methodology in the School District's *"Comprehensive Guide to the School Performance Index"*, the SPI Ranking may be met based on any combination of improvements in SPI components, including PSSA growth, PSSA Achievement, and student/teacher/parent engagement.

If a Renaissance Schools does not meet their Performance Targets for two consecutive years, the SRC may vote to revoke their charter.

**EXHIBIT E-3**

## THE SCHOOL DISTRICT OF PHILADELPHIA

### Provision of Special Education Services to Charter School Students Guidelines

The following duties will apply to charter schools:

1) Each charter school is responsible for providing a free appropriate public education to students with disabilities enrolled in that charter school who have been determined by an Individualized Education Program (IEP) team to require specially designed instruction. The cost of implementing the specially designed instruction will be borne by the charter school. Students provided such services by the charter school and with a valid Nora, CER and IEP will be considered eligible for additional special education payment to the charter school. Charter schools are required to input relevant data to the School Computer Network (valid dates of Nora, CER and IEP) and submit the first page of the IEP to the District. Assuming valid Nora and CER, payments are effective as of the date listed on the IEP.

2) Each charter school must ensure full compliance with the Individuals with Disabilities Education Act (IDEA). This includes, but is not limited to child find, identification, and procedural safeguards, including: access to records, appointment of surrogate parents, notice, opportunity for mediation of disputes, the right to a due process hearing, and assurance of the Free and Appropriate Public Education (FAPE).

3) Each charter school must ensure that students who are suspected of having disabilities are properly evaluated and re-evaluated at established intervals required by IDEA, using culture-fair, non-biased assessment tools, by properly certified personnel, adhering to required timelines, and providing required notification to parents.

4) When a student enrolled in a charter school presents a valid and current IEP, and/or the charter school IEP team determines that a student with disabilities requires specially designed instruction, the charter school must ensure that the IEP is implemented in accordance with the IDEA, and reviewed at least annually.

5) Charter schools must maintain the confidentiality of personally identifiable information regarding students with disabilities as per the Family Educational Rights and Privacy Act (FERPA) and IDEA.

6) The charter school is responsible for providing the names of all students eligible for special education services provided by the charter school along with all other data required for the federal child count. This data is to be submitted electronically through the District's School Computer Network (SCN) no later than November 30 of each year.

7) Continuation of the additional special education payment is contingent on the charter school maintaining current and valid IEP, Nora and CER documentation. As stated in Section 1728-A of Act 22 of 1997, the charter school will provide to the School District "ongoing access to records and facilities of the charter school to ensure that the charter school is in compliance with its charter and this Act and that requirements for testing, civil rights, and student health and safety are being met."

8) Verification of students' eligibility for the additional special education funding will be based on the charter school's performance of all necessary procedures relative to the evaluation and re-evaluation for special education services in accordance with the timelines and criteria specified by law.

## **EXHIBIT F**

## **CURRENT CHARTER SCHOOL RECORDS**

Every charter school must maintain the following records ("Current Charter School Records") on-site at the charter school's facility and make such Current Charter School records available for inspection by the School District:

1.  Up-to-date Clearances for Every Employee and Volunteer of the Charter School:

    *   Child Abuse Clearances
    *   Criminal Record Checks by the Pennsylvania State Police and FBI

2.  Student Immunization Records

3.  Home Language Survey Results

4.  Parent/Student Handbook

5.  Statements of Financial Interests for Members of the Charter Board of Trustees and for all administrators (due May 1 of each year)

6.  Posted Charter Board of Trustees Meeting Dates, Times and Locations

7.  Charter Board of Trustees Meeting Minutes

8.  Charter School Bylaws

9.  Charter Enrollment Forms for all students enrolled in the Charter School as of the date of enrollment.

**EXHIBIT G**

**ATTENDANCE ZONE MAP**

**<u>EXHIBIT H</u>**

**CHARTER SCHOOL'S SPECIFIC PERFORMANCE TARGETS**

## EXHIBIT I

## REQUIRED FINANCIAL PROCEDURES

---

The treasurer of the charter shall deposit the funds belonging to the charter school in a depository approved by the board and shall at the end of each month make a report to the charter board of trustees of the amount of funds received and disbursed by him or her during the month. All deposits of charter school funds by the charter treasurer shall be made in the name of the charter school.

The board of trustees of a charter school shall invest charter school funds consistent with sound business practice. Authorized types of investments for charter schools shall be:

       \*      United States Treasury bills

       \*      Short-term obligations of the United States Government or its agencies or instrumentalities

       \*      Deposits in savings accounts or time deposits or share account of institutions insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation or the National Credit Union Share Insurance Fund to the extent that such accounts are so insured, and for any amounts above the insured maximum, provided that approved collateral as provided bylaw therefor shall be pledged by the depository.

       \*      Obligations of the United States of America or any of its agencies or instrumentalities backed by the full faith and credit of the United States of America, the Commonwealth of Pennsylvania and any of its agencies or instrumentalities backed by the full faith of the Commonwealth, or of any political subdivision of the Commonwealth of Pennsylvania of any of its agencies or instrumentalities backed by the full faith and credit of the political subdivision.

       \*      Shares of an investment company registered under the Investment Company of America Act of 1940 (54 Stat. 789, 15 U.S.C. § 80a-1 *et seq.*) as defined in 24 P.S. § 4-440.1 of the Public School Code.

NOTE:      **All investments shall be subject to the standards set forth in 24 P.S. § 4-440.1 of the Pennsylvania Public School Code.**

The school treasurer shall settle annually at the end of the Charter School's regular fiscal year, with the School Reform Commission or its designee, each account that the school may have open with the School District for such fiscal year.

An annual school audit shall be conducted according to the requirements of Article 24 of the Public School Code of 1949 as amended.  Charter school boards of trustees shall follow requirements set forth for school boards in this section.